555 A.2d 535

**Jody Kathleen BOYD**

v.

**STATE of Maryland.**

**No. 955, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

March 31, 1989.

Certiorari Granted July 25, 1989.

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Beverly Peyton Griffity, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Warren B. Duckett, Jr., State's Atty. for Anne Arundel County, Annapolis, on the brief), for appellee.

Submitted before ROSALYN B. BELL and WENNER, JJ., and JAMES S. GETTY, Associate

**56**

Judge of the Court of Special Appeals (retired), Specially Assigned.

JAMES S. GETTY, Judge, Retired, Specially Assigned.

The appellant, Jody Kathleen Boyd, was convicted of first degree murder at the conclusion of a court trial in the Circuit Court for Anne Arundel County. The trial judge sentenced appellant to life imprisonment without possibility of parole. Upon review of sentence initiated by appellant, her sentence was reduced by a three judge panel to life imprisonment *with* a possibility of parole. This appeal followed.

The issues raised by appellant are:

1. The trial judge erred in refusing to recuse himself.
2. The trial judge erred in refusing to suppress appellant's statement to the police.
3. The trial judge erred in admitting extrajudicial statements of the alleged co-conspirators.
4. The trial judge erred in allowing the State to amend the charging document.

Before addressing the issues raised, a recitation of the events that precipitated the criminal charges is instructive. Although no precise date is set forth in the record, it is apparent that in early June, 1987, a plan began to evolve whereby Michael Boyd, appellant's husband, would cease to exist. From the number of people who were aware of the plot, this conspiracy to commit murder must have been one of the worst kept secrets in Anne Arundel County. One witness testified "about twenty people knew about it."

According to James Hayes,[1] a fifteen-year-old who participated in Boyd's murder on July 2, 1987, a meeting was held at the home of Laura Dilley in early June of 1987. Present at that meeting were Hayes, appellant, Michael Woods and

---

1. Hayes was originally charged as an adult in the eventual murder, but was not tried as an adult. The record is unclear as to whether he was tried as a juvenile. We assume he opted to testify in exchange for having his case remanded to Juvenile Court.

Donald Dare. During that meeting, according to Hayes, appellant "threw some wire" to Woods who allegedly said he would "use it to blow up Michael Boyd's car." Subsequently, Woods and Dare purchased an explosive device and planted it in Boyd's car. The device malfunctioned and was later retrieved before Boyd had an opportunity to discover it.

Hayes then recounted the events that occurred on July 2nd. Woods and Dare arrived at Hayes' home and all three left at 9:30 p.m. and drove to the Glenmar Apartments. Woods and Dare, both armed, left Hayes in the car. Shortly thereafter they returned and, Hayes stated, Dare "told me that Mike Woods had shot Michael Boyd."

Two other witnesses testified to events leading up to the shooting. Michelle Madden stated that she overheard a conversation between appellant and Woods during which appellant said she wanted to get rid of her husband and thought about removing brake fluid from his car so that he would have an accident. Another witness, Cheri Rutherford, stated that she was sleeping on a couch at appellant's home several days before the murder. Woods and Dare arrived at 7:30 a.m. and the witness, pretending to be asleep, overheard Woods complaining that the victim was not where he was supposed to be at 5 o'clock. Appellant then asked if they could try again the next day. Woods agreed and, according to Rutherford, "Jody said she wished they would kill him and get it over with." Rutherford notified the police immediately after learning that Boyd had been shot and killed.

In her statement to the police after the murder, appellant admitted discussing the murder of her husband with Woods and Dare including the amount of money to be paid to Woods. She admitted being aware of the botched bombing attempt, but insisted that she broached the idea of killing Boyd in a non-serious "laughing" manner. Appellant further informed the police that her husband had repeatedly raped and beaten her, had beaten their children and threat-

ened to kill her if she attempted to obtain a separation or divorce.

## I Recusal

Appellant contends that the trial judge should have recused himself because he presided over a court trial of a co-defendant in this case three weeks prior to appellant's appearance in court. The colloquy between the trial judge and defense counsel, on a motion to reconsider the judge's refusal to recuse himself, includes, in pertinent part, the following:

COUNSEL: The defendant is constitutionally entitled to choose between a fair and impartial trier of fact, be it a court or a jury.

COURT: What is your election?

COUNSEL: ...If the court says, well then take a jury trial.

COURT: No, no, I'm asking what's your election. You say she has the ability to do that, let her make her election.

Counsel cited *Carey v. State*, 43 Md.App. 246, 405 A.2d 293 (1979), *cert. denied*, 445 U.S. 967, 100 S.Ct. 1660, 64 L.Ed.2d 244 and asked for the same option granted the defendant in that case after the court had refused a motion to recuse. In *Carey* the court allowed the defendant to elect either a jury trial or removal of the case to another jurisdiction. Thereafter, the court in the present case said:

COURT: Why aren't you given that option?

COUNSEL: If the court would say to us, would you like to move this case out of [sic] another jurisdiction.

COURT: Well you have to make an election judge or jury ... Your whole argument is a waste of time if you want a jury trial.

COUNSEL: ...I would suggest to the court that our defense may be more legally based than factually based. In which case the decisions as to the application of the law would be for the court to determine even if a jury were impaneled in the case.

COURT: Make an election.

COUNSEL: We would make our election after the court rules on ... our request to reconsider ... or request to allow us to move this to another jurisdiction.

COURT: All right. At this time I'll overrule your motions. And, that will depend, and then I'll reconsider it once you make your election.

COUNSEL: ...At this point dealing with the court and the court's ability to hear the case, we will base our motion on, for removal on the fact that the court denied the motion to recuse itself.

COURT: Okay. All right. Well, I've heard no reason except what you've stated so far with regard to removal. And, I'll overrule your motion to recuse. And so I'll ask again what is your election, judge or jury?

COUNSEL: We would proceed before the court without a jury.

Appellant's original motion to recuse was predicated upon the trial court's having heard the prior trial of a co-defendant. The earlier trial, appellant argued, involved the same issues that would arise in the instant case and the trial judge had already determined that a conspiracy to murder existed among appellant, Woods and Dare. Further, appellant contended that the court had heard evidence damaging to appellant from Woods' statement to the police that would be inadmissible at appellant's trial. The testimony of witnesses Madden and Dilley implicating appellant in the conspiracy to murder, it was alleged, would be the same in both cases.

Appellant was not automatically entitled to removal because the State did not seek the death penalty pursuant to Md. Code, Art. 27, sec. 412. A transfer to another jurisdiction is mandated only where the maximum penalty is death. Md. Rule 4–254; Md. Constitution, Article IV, sec. 8. A right of removal, moreover, does not carry the right to have a different judge preside at the trial. *Johnson v. State,* 258 Md. 597, 267 A.2d 152 (1970). We shall not speculate on

whether the trial judge may have presided had he permitted the case to be removed. The issue before us, therefore, is whether he abused his discretion in denying the recusal motion.

We note that appellant makes no claim that she could not receive a fair trial by jury. She claims that she had the same right to a court trial by a judge who has not heard, and accepted as true, evidence of appellant's guilt in a separate trial three weeks earlier.

We begin the discussion of the applicable law on the recusal issue with the *Carey* case cited by appellant. In *Carey*, as here, the trial judge found appellant's co-defendant guilty of bribery in a non-jury trial. The allegations in *Carey* included: the court exhibited prejudice toward appellant and his counsel in that the judge recused himself in another case due to his dislike for counsel; that he found a co-defendant guilty of the same charges; that he granted a defendant a new trial and accepted a plea of *nolo contendere* in a separate case so that the witness would be available as a State's witness in Carey's case; and that appellant's motion to dismiss was held *sub curia* in order that appellant's case could be heard without any interlocutory appeal.

Rejecting appellant's arguments, this Court (Melvin, J.) held that "participation in prior legal proceedings involving related parties or proceedings is simply not grounds for a judge to recuse himself." *See, United States v. Partin,* 552 F.2d 621 (Fifth Cir.1977); *Laws and Dorman v. State,* 7 Md.App. 84, 253 A.2d 780 (1969). The burden borne by a defendant on the issue of recusal is a substantial one because of the "assumed proposition that judges are men of discernment, learned and experienced in the law and capable of evaluating the materiality of evidence." *State v. Babb,* 258 Md. 547, 267 A.2d 190 (1970).

The issue of recusal of a trial judge was before this Court in *Nash v. State,* 69 Md.App. 681, 519 A.2d 769 (1987). The recusal motion by the appellant in *Nash* set forth that the

same judge had presided at appellant's previous trial wherein appellant was accused of committing similar sexual offenses against the sister of the victim in the case then before the court. Specifically, appellant alleged that the judge knew that the accused had a prior record; that the court refused to merge various criminal charges in the earlier case and imposed consecutive sentences. This Court (Garrity, J.) held that a judge's previous participation in an earlier related trial is "beside the point" where the judge is merely presiding over the presentation of the evidence to a jury. The Court added that there is no *per se* rule requiring recusal where the judge is the fact-finder in the subsequent trial.

A review of out of state cases on recusal indicates that a majority of decisions addressing the issue are consistent with our holding in *Carey* and in *Nash*. *Jones v. State*, 416 N.E.2d 880 (First Dist. Ind.1981), cites with approval our holding in *Carey*. Jones predicated his motion for recusal on the Indiana Code of Judicial Conduct, Canon 3(C)(1)(a) which provides in pertinent part that:

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; ...[2]

Jones and a co-defendant were charged with possession of narcotics. The co-defendant was tried at a bench trial and was convicted. At a later time Jones appeared before the same judge, waived a jury trial, and moved that the judge disqualify himself. The oral motion was overruled.

Denying Jones' allegation of error, the Indiana Court of Appeals said:

The law presumes that a judge is unbiased and unprejudiced in the matters before him.... The only prejudice

---

which will disqualify a judge is a personal prejudice for or against a party. [Citation omitted.] The record must show actual bias or prejudice of the judge against the defendant before a conviction will be reversed on the ground that the trial judge should have disqualified himself. [Citations omitted.]

The Court rejected Jones' contention that the mere fact of the judge's participation in the prior bench trial of a co-defendant precluded the same judge from presiding as the fact finder in Jones' case.

Other cases have held that a judge who presided at the trials of all co-defendants did not err in refusing to recuse himself in the trial of a remaining defendant. *United States v. Partin,* 601 F.2d 1000 (9th Cir.) (1979). Nor does the fact that a judge has accepted a guilty plea in a prior proceeding where the defendant was implicated disqualify him from hearing the ensuing trial. *People v. Rider,* 93 Mich.App. 383, 286 N.W.2d 881 (1979); *United States v. Bernstein,* 533 F.2d 775 (9th Cir.) (1976), *cert. denied,* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608. Finally, the fact that a judge participated in an earlier trial of the same defendant does not preclude his participation in a later trial of the same charge or same defendant. *United States v. English,* 501 F.2d 1254 (7th Cir.) (1974), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975).

Appellant relies upon *In re George G.,* 64 Md.App. 70, 494 A.2d 247 (1985), as supportive of his motion for disqualification of the trial judge. Six males in that case engaged in the rape of a young woman. The trial judge heard the withdrawn admissions of three of the defendants and found each to be delinquent. Three weeks later appellant appeared for trial before the same judge and requested that the judge disqualify himself because he already determined that the intercourse was not consensual. Appellant did not deny the incident but alleged that the victim consented to have sexual relations. The motion was denied and appellant was found to be delinquent. We reversed (Alpert, J.). The Court said:

We have not the slightest doubt that the able and experienced trial judge was completely familiar with those principles above recited (presumption of innocence—proof beyond a reasonable doubt). Subconsciously, however, there apparently lingered on in the deep recesses of his mind the previous finding of the lack of consent on the part of the victim.... We believe, however, that when the trial judge said (to defense counsel) "You might be able to prove he is innocent," that which had been subconscious came to the surface and caused an irreparable taint on the proceedings....

In short, we concluded that the trial court's comment was an expression of bias that mandated recusal.

The case *sub judice* is distinguishable from *In re George G.* in two respects; namely:

1. George G. had no election as to the trial mode because the proceeding was in juvenile court, and

2. In the present case there is not a scintilla of evidence either by rulings or comments by the trial judge that indicates bias or prejudice.

Appellant's primary argument on the recusal motion sets forth that the trial judge heard incriminating evidence in the earlier Woods trial establishing that appellant concocted the scheme to kill her husband, engaged Woods to carry out the murder and agreed to pay him for committing the offense. This evidence was testified to by a police officer who interrogated Woods and, according to appellant, *that* testimony would have been inadmissible in her case. Cognizant of this incriminating and inadmissible evidence, appellant states, the trial judge should have recused himself in the second trial three weeks later.

The testimony alluded to by appellant was presented in Woods' trial by Detective Ron Bateman who interrogated Woods within several days of the murder. Bateman's testimony was, in pertinent part, as follows:

I recall starting off the interview by telling [Woods] that we had interviewed several people and I ... indi-

cated to Mr. Woods that we knew the entire story and we basically wanted to hear what he had to say about the incident. And at that point he started right into telling us that he had not known the victim, Michael Boyd. However, he was acquainted with Jody Boyd, Michael Boyd's wife. He said that he was approached by Mrs. Boyd, Jody Boyd, and that she wanted Michael Woods to take care of her husband.... Mrs. Boyd had apparently told Mr. Woods that her husband, Michael, had been beating her and that she couldn't take it anymore and that he agreed to take care of her husband for her. He agreed, I don't recall if during the oral stage if he talked about trying to blow Mr. Boyd's car up, I'd have to review the notes for that.... However, he did say that he and James, which he didn't know ... James' last name, and Donald Dare had all agreed to take care of this for Mrs. Boyd.

He said that she was agreeing to send her husband out to Hardees on this particular evening, July 2, 1987, and that he hid underneath the truck that was parked next to the space where Mr. Boyd had been parked at. He told me that he waited for Mr. Boyd to come back from Hardees and that he jumped up at that point, and at this point in the interview I specifically recall him raising his right hand and telling us, "yes, I shot him." I recall Mr. Woods talking about the reason why what he was going to gain out of doing this for Mrs. Boyd which was that she was going to give him some money out of it.

The trial judge, therefore, was aware that Woods' statement to Detective Bateman established that appellant, Jody Boyd, solicited Woods to kill her husband for money. The judge, presumably, was also aware that this testimony would be inadmissible hearsay in a subsequent trial against Jody Boyd.[3] The question then becomes whether the judge,

---

3. Initially, appellant was charged with conspiracy to commit murder in addition to the other criminal offenses. The State dismissed the conspiracy count immediately before trial.

based upon the prior testimony of the co-conspirator and other witnesses, should have recused himself in the trial of Jody Boyd.

■ The State seeks to diffuse the impact of this prejudicial testimony by pointing out that the similarity of the testimony in both cases is overshadowed by the admission of appellant's inculpatory statement in her trial. We agree that the evidence produced at appellant's trial, including her statement, was clearly sufficient for the trier of fact to find her guilty beyond a reasonable doubt. We do not agree, however, that the end justifies the means. Whether recusal is appropriate depends upon what the trier of fact knows when the trial begins, not when it ends. A review on appeal necessarily includes scrutiny of the entire proceeding in order that the reviewing court can determine whether bias or prejudice is shown. That does not mean, however, that a trial judge may summarily dismiss a motion for recusal and rely upon the totality of the evidence to support his or her denial of a recusal motion. If that were the case, the right of recusal would be meaningless.

Md. Rule 1231, Canon 3, C *Recusal*, states:

(1) A judge should not participate in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or lawyer has been a material witness concerning it.

■ The record herein does not remotely suggest that the trial judge held any personal bias or prejudice against the defendant. In fact, we may reasonably conclude that he did not know her prior to trial. "Personal knowledge of disputed evidentiary facts" concerning the proceedings, has

been defined as "knowledge acquired from extrajudicial sources, not what the judge learned from his participation in the case." *Jones v. State, supra; United States v. Mitchell*, 377 F.Supp. 1312 (D.C.D.C.1974); *United States v. English, supra.* The trial judge in the present case is not alleged to have obtained any knowledge concerning appellant except that which was produced at Woods' trial.

Whether the trial judge's impartiality might reasonably be questioned in this case, given the incriminating statement of a co-defendant in a trial three weeks earlier, is a question where reasonable minds may differ. We suggest that recusal may have been more prudent absent any scheduling conflicts or other reasons which are not disclosed in the record. We do not find, however, that the denial of the motion to recuse constitutes an abuse of discretion.

## II  Appellant's Statement

■ Appellant contends that her statement to the police was involuntary because she asked to see her children before executing a written statement and the interrogating officer responded that she would be allowed to see the children *after* a written statement had been completed and signed. Appellant construes the conditional granting of her request to see her children as an improper inducement to have her sign a written statement. We disagree.

We know of no right on the part of a suspect in a murder case to interrupt the interview process in order that the suspect may visit with his or her children before continuing the interrogation. The record is clear that appellant was offered no promises and was not threatened before she agreed to submit to oral questioning and to reduce her statement to writing. *See, Ellison v. State,* 65 Md.App. 321, 500 A.2d 650 (1985), *aff'd,* 310 Md. 244, 528 A.2d 1271 (1987).

## III  Co–Conspirator's Out of Court Declaration

James Hayes testified to out of court statements made by Michael Woods and Donald Dare relating to the attempted bombing of the victim's car and his eventual murder. Ap-

pellant argues that this testimony should not have been admitted under the co-conspirator exception to the hearsay rule because:

1. She was denied the right to confront the witnesses and the State was relieved of the necessity to establish either reliability of the testimony or the unavailability of either Woods or Dare, and

2. Some of the statements related to events after the goal of the conspiracy was accomplished.

■ Appellant's first point has been raised and rejected by the United States Supreme Court. The Sixth Amendment right to confrontation in criminal cases does not require a showing that a co-conspirator is unavailable before introducing his or her statements against the defendant. *United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986).

■ The second point raised refers to two statements. One was Dare's comment to Hayes immediately following the shooting that Woods had shot the victim. The second statement was Woods saying "Let's get out of here." Appellant mistakenly concludes that the conspiracy ended when the shot was fired. We point out that the record indicates that the victim did not die immediately after being shot. The Court of Appeals, moreover, has stated:

Before conspirators can be said to have successfully attained their main objective, they often must take additional steps, *e.g.,* fleeing or disposing of the fruits and instrumentalities of crime.... Therefore, statements made in connection with such acts occur before the conspirators have attained their chief objective and are admissible.

*See, State v. Rivenbark,* 311 Md. 147, 533 A.2d 271 (1987). We perceive no error.

## IV   Amendment of Indictment

■ Appellant seems to suggest that any change in dates covering the beginning and termination of the conspiracy

**68**

nullifies the charge returned by the Grand Jury. Maryland Rule 4–204 provides that the court may allow amendment of a charging document anytime before verdict, except that a change in the character of the offense charged requires the consent of the parties.

Expanding the dates of the conspiracy does not alter any essential elements of the offense and, furthermore, appellant has alleged no prejudice as a result of the amendment. The court did not err. *McKnight v. State,* 33 Md.App. 280, 364 A.2d 116 (1976), *rev'd on other grounds,* 280 Md. 604, 375 A.2d 551 (1977).

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.