581 A.2d 1

**Jody  Kathleen  BOYD**

v.

**STATE  of  Maryland.**

**No.  62,  Sept.  Term,  1989.**

Court  of  Appeals  of  Maryland.

Oct.  29,  1990.

70

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for petitioner.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS *, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland, retired, specially assigned.

McAULIFFE, Judge.

The question presented is whether the trial judge erred in refusing to recuse himself. The facts involve successive

---

* Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

court trials of codefendants by the same judge. We find no error in the denial of the motion for recusal.

On 2 July 1987, Michael Boyd was shot to death in the parking lot of his apartment complex in Anne Arundel County. Four persons were accused of complicity in the murder, and of having unsuccessfully attempted to dynamite the victim's car several days earlier. The petitioner, Jody Kathleen Boyd, was accused of employing others to kill her husband, and of aiding and abetting them in the endeavor. Michael Gregory Woods was accused of actually shooting the victim, and Donald Dare was accused of being present and directly aiding Woods. James Hayes, a juvenile, was accused of aiding and abetting the murder.

The plan to kill Michael Boyd, aptly described by the Court of Special Appeals as "one of the worst kept secrets in Anne Arundel County," [1] came to the attention of the police shortly after the murder. The four suspects were arrested, and each gave an incriminating statement. Because the State's Attorney believed that the confession of each defendant was inadmissible against the other defendants, he secured separate indictments and did not attempt to consolidate the cases for trial.

All of the cases were assigned to Judge H. Chester Goudy, Jr. for trial. Woods came to trial first. He waived his right to a jury trial, and was tried by Judge Goudy. He was found guilty of first degree murder, attempted murder (as a result of the attempt to bomb the victim's car), conspiracy with Dare to dynamite the victim's car, and the use of a handgun in the commission of a felony. This Court affirmed the convictions. *Woods v. State*, 315 Md. 591, 556 A.2d 236 (1989).

On the second day of Woods's three-day trial, Judge Goudy began hearing motions to suppress in the petitioner's case, and in Dare's case. At the beginning of the hearing of the motions, both defendants orally moved to have Judge

---

1. *Boyd v. State*, 79 Md.App. 53, 56, 555 A.2d 535 (1989).

Goudy recuse himself, contending that his participation in Woods's trial precluded him from hearing the motions in the codefendants' cases. Judge Goudy denied the motions, declaring his confidence in his ability to fairly hear and determine the motions on their merits. He stated that if the defendants wished to renew their motions for recusal in connection with their trials, he would consider those motions in light of facts existing at that time.

Two weeks later, as petitioner's trial was about to begin, her attorneys renewed the motion for recusal. Judge Goudy suggested that petitioner should first elect whether she would be tried by a jury or by the court, on the basis that if she elected a jury trial, there would be no conceivable grounds for recusal. Petitioner declined to make an election until the judge ruled on her motion. After considering additional proffers and arguments of counsel, Judge Goudy denied the motion for recusal. The petitioner then waived her right to be tried by jury, and the waiver was accepted by the court. Judge Goudy declared a brief recess, and upon his return to the bench, announced that he had read all the cases on recusal given him by counsel and had re-evaluated his ability to try the case. He then said he was convinced he "could use the proper test and be impartial in the matter."

■ Petitioner was found guilty of murder in the first degree, attempted murder, and conspiring with Woods and Dare to dynamite her husband's car. She was sentenced to life imprisonment without possibility of parole on the murder conviction, and was given concurrent life sentences on the remaining convictions.[2] She appealed to the Court of

---

2. The sentence of life without parole was later reduced to a life sentence by a sentence review panel. Although petitioner has not raised the point, we note that the sentence of life imprisonment for the crime of attempting to dynamite a vehicle exceeds the statutory maximum of 20 years' imprisonment, Maryland Code (1957, 1987 Repl.Vol.) § 119 of Article 27, and is, therefore, an illegal sentence. We assume that this sentence will be corrected by the trial court after

Special Appeals, and that Court affirmed the convictions. *Boyd v. State*, 79 Md.App. 53, 555 A.2d 535 (1989). We granted certiorari to consider whether the trial judge erred in denying the request for recusal.

The traditional common law rule was that disqualification for bias or prejudice was not permitted. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). Moreover, constitutionally based claims, suggesting that failure to disqualify may result in a denial of due process, are successful "only in the most extreme of cases." *Id.* at 821, 106 S.Ct. at 1585.

Although the rigors of the common law rule have been relaxed, this Court has acknowledged that trial judges necessarily enjoy a broad range of discretion in ruling on motions for recusal when there is no constitutional or statutory disqualification.

> There may be, and doubtless are, many circumstances in which a delicate sense of propriety would, and probably should, induce a judge to decline to sit in a given case and, upon his own motion or upon motion of either of the parties, remove the cause to another jurisdiction or request some other judge of the same jurisdiction to preside at the trial. However, if the presiding judge, under such circumstances, refuses to do this, he is within his legal rights; and his action in that respect is not the subject of review. Where the alleged disqualification does not amount to a constitutional or legal disqualification, the question is left to the enlightened conscience, delicacy of feeling, and sense of fairness possessed by the individual judge. The long and honorable history of the judiciary of this state impels the belief that the decision of such questions can be safely left where the responsibility now reposes. Judges are selected to be useful public servants, and no judge's view of the proprieties in such questions should be carried to such an extent as would

---

the case is remanded pursuant to our mandate. *See* Maryland Rule 4–345(a).

result in the serious curtailment of his usefulness as a public officer.

*Ex Parte Bowles,* 164 Md. 318, 326, 165 A. 169 (1933).

More recently, the rules of disqualification have been established by statute or by rule of court. In the case before us, petitioner relies upon Canon 3C of the Maryland Code of Judicial Conduct, Maryland Rule 1231, which provides in pertinent part that:

(1) A judge should not participate in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; ...

In *Doering v. Fader,* 316 Md. 351, 558 A.2d 733 (1989), we held that the trial judge was not disqualified from hearing a sentencing proceeding in a capital punishment case simply because he had presided at an earlier trial and sentencing proceeding in the same case, and had formed and expressed an opinion concerning the propriety of a death sentence under the circumstances of that case. We quoted from the leading Supreme Court case on the subject, as follows:

The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.

*United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). We acknowledged that there were occasions when information received by the trial judge would result in disqualification, 316 Md. at 357 n. 3, 558 A.2d 733,[3] but held that *Doering* was not such a case.

---

**3.** We cited as examples of required disqualification: *Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) (resentencing should be accomplished by a different judge when plea agreement has been violated and appropriate relief is specific performance of the agreement); *Miller v. State,* 272 Md. 249, 255, 322 A.2d 527 (1974) (same); *Cornish v. State,* 272 Md. 312, 321–22, 322 A.2d 880 (1974) (information that should not have been presented to

■ The question involved before us differs somewhat from that presented by *Doering*. We are here concerned with information acquired by the trial judge as a result of prior judicial proceedings involving codefendants, rather than information gained from a previous trial of the same defendant. We conclude, however, that the answer in each case is the same. The information was acquired during prior judicial proceedings, and is not, therefore, *personal* knowledge or bias requiring disqualification.

■ As we pointed out in *Doering, supra*, the word "personal" as used in Canon 3C means knowledge acquired from extrajudicial sources. *Id.* at 355–57, 558 A.2d 733. Federal courts, interpreting a statute similar in content to Canon 3C,[4] draw the same distinction. In *Craven v. United States*, 22 F.2d 605, 607–08 (1st Cir.1927), the court said:

At most, then, the affidavit charges a 'bias and prejudice,' grounded on the evidence produced in open court at the first trial, and on nothing else. We hold that such bias and prejudice (if these be appropriate terms for a well-grounded state of mind, [*Berger v. United States*] 255 U.S. [22,] 42, 41 S.Ct. [230,] 236, 65 L.Ed. 481) is not personal; that it is judicial. "Personal" is in contrast with judicial; it characterizes an attitude of extra-judicial origin, derived non coram judice. "Personal" characterizes clearly the prejudgment guarded against. It is the significant word of the statute. It is the duty of a real judge to acquire views from evidence. The statute never contemplated crippling our courts by disqualifying a

---

the trial judge may sufficiently impair the judge's ability to be impartial so as to justify a mistrial in a non-jury proceeding).

**4.** 28 U.S.C. § 455 provides in pertinent part that:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; ...

judge, solely on the basis of a bias (or state of mind, 255 U.S. [at] 42, 41 S.Ct. [at] 236, 65 L.Ed. 481) against wrongdoers, civil or criminal, acquired from evidence presented in the course of judicial proceedings before him. Any other construction would make the statute an intolerable obstruction to the efficient conduct of judicial proceedings, now none too speedy or effective.

More recently, the United States Court of Appeals for the Ninth Circuit has said that "the alleged prejudice must result from an extrajudicial source" and "[p]arties cannot attack a judge's impartiality on the basis of information and beliefs acquired while acting in his or her judicial capacity." *United States v. Monaco*, 852 F.2d 1143, 1147 (9th Cir. 1988), *cert. denied*, 488 U.S. 1040, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989), quoting from *United States v. Studley*, 783 F.2d 934, 939 (9th Cir.1986), and *United States v. Frias–Ramirez*, 670 F.2d 849, 853 n. 6 (9th Cir.), *cert. denied*, 459 U.S. 842, 103 S.Ct. 94, 74 L.Ed.2d 86 (1982). To the same effect, see *United States v. Page*, 828 F.2d 1476, 1481 (10th Cir.), *cert. denied*, 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987); *First Alabama Bank of Montgomery v. Parsons Steel*, 825 F.2d 1475, 1487 (11th Cir.1987), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988); *In re Cooper*, 821 F.2d 833, 838–39 (1st Cir.1987); *United States v. Ratcliff*, 806 F.2d 1253, 1255 (5th Cir.1986), *cert. denied*, 481 U.S. 1004, 107 S.Ct. 1625, 95 L.Ed.2d 199, *reh'g denied*, 481 U.S. 1072, 107 S.Ct. 2470, 95 L.Ed.2d 878 (1987); *United States v. Merkt*, 794 F.2d 950, 960 (5th Cir.1986), *cert. denied*, 480 U.S. 946, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987); *United States v. Haldeman*, 559 F.2d 31, 132–34 (D.C.Cir.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *United States v. Partin*, 552 F.2d 621, 636–39 (5th Cir.1977); *United States v. Patrick*, 542 F.2d 381, 390 (7th Cir.1976); *United States v. Bernstein*, 533 F.2d 775, 784–85 (2d Cir.1976); *United States v. Falcone*, 505 F.2d 478, 485 (3d Cir.1974), *cert. denied*, 420 U.S. 955, 95 S.Ct. 1338, 43 L.Ed.2d 432 (1975); *United States v. DiLorenzo*, 429 F.2d 216, 220–21 (2d Cir.1970).

As indicated previously, this Court has applied the distinction between personal and judicial information in interpreting and applying Canon 3C. *Doering v. Fader, supra; State v. Calhoun,* 306 Md. 692, 749, 511 A.2d 461 (1986). The Court of Special Appeals also has consistently pointed to the same distinction. *See Carey v. State,* 43 Md.App. 246, 249, 405 A.2d 293 (1979), *cert. denied,* 445 U.S. 967, 100 S.Ct. 1660, 64 L.Ed.2d 244 (1980); *Laws and Dorman v. State,* 7 Md.App. 84, 87, 253 A.2d 780 (1969); *Day v. State,* 2 Md.App. 334, 337–38, 234 A.2d 894 (1967). A number of state courts have accepted the same analysis. See the cases cited in *Doering,* 316 Md. at 356–57, 558 A.2d 733. In addition, see *State v. Thompson,* 150 Ariz. 554, 556–58, 724 P.2d 1223, 1225–27 (1986); *In re Richard W.,* 91 Cal.App.3d 960, 968, 155 Cal.Rptr. 11, 17 (1979); *People v. Neumann,* 148 Ill.App.3d 362, 101 Ill.Dec. 899, 904, 499 N.E.2d 487, 492 (1986); *Jones v. State,* 416 N.E.2d 880, 881–82 (Ind.App. 1981).

■ Although it is clear that information obtained by a judge in prior proceedings involving the same case is not "personal" knowledge within the meaning of Canon 3C, the question presented here is whether information gained from prior proceedings involving codefendants is also properly treated as "judicial" and not "personal" information. We hold that it is.

In *Thanos v. Superintendent,* 204 Md. 665, 667–68, 104 A.2d 926 (1954), we said:

This Court has recently stated that, in the absence of a constitutional or statutory provision to the contrary, the Judge who presided at the trial of a case which is reversed on appeal and remanded for a new trial is not disqualified to retry the case. *Board of Medical Examiners v. Steward,* 203 Md. 574, 583, 102 A.2d 248, 252 [ (1954) ]. The principle se[e]ms sufficiently broad to cover the issue here raised and no convincing reason appears that would require a trial judge who had previously tried related cases involving different defendants to disqualify himself in petitioner's trial.

Similarly, the decision of the Court of Special Appeals in *Carey v. State, supra,* is on point. In *Carey,* the defendants sought disqualification of the trial judge because, among other things, the judge had participated in earlier proceedings involving a codefendant. The intermediate appellate court found no error in the refusal of the trial judge to recuse himself, stating that:

> Participation in prior legal proceedings involving related parties or issues is simply not grounds for a judge to recuse himself.

43 Md.App. at 249, 405 A.2d at 296.

Decisions from other jurisdictions are in accord. *See, e.g., United States v. Monaco, supra,* 852 F.2d at 1147 (knowledge obtained from judicial proceedings involving a codefendant does not require recusal); *United States v. Phillips, supra,* 664 F.2d at 1002–03 (motion for recusal may not ordinarily be predicated upon the judge's rulings in the same or a related case); *United States v. Partin,* 601 F.2d 1000, 1011 (9th Cir.1979), *cert. denied,* 446 U.S. 964, 100 S.Ct. 2939, 64 L.Ed.2d 822 (1980) (recusal not required where judge had presided at trials of all codefendants); *United States v. Haldeman, supra,* 559 F.2d at 132–33 (trial judge not disqualified because he presided over a series of criminal proceedings emanating from a single transaction); *United States v. Mathis,* 550 F.2d 180, 182 (4th Cir.1976), *cert. denied,* 429 U.S. 1107, 97 S.Ct. 1140, 51 L.Ed.2d 560 (1977) (that trial judge presided at trial of codefendant is not ground for disqualification); *United States v. Bernstein,* 533 F.2d 775, 784–85 (2d Cir.), *cert. denied,* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976) (disqualification not required because judge received guilty pleas from codefendants); *United States v. DiLorenzo, supra,* 429 F.2d at 221 (same judge may preside at seriatim trials of coconspirators); *United States v. Cook,* 400 F.2d 877, 878 (4th Cir.1968), *cert. denied,* 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792 (1969) (judge is presumed not to confuse evidence in one case with that in another); *United States v. Myers,* 381 F.2d 814, 817–18 (3d Cir.1967), *cert. denied,* 390

U.S. 973, 88 S.Ct. 1065, 19 L.Ed.2d 1185 (1968) (judge not disqualified from presiding at court trial by having received prior guilty plea from codefendants); *State v. Thompson, supra,* 150 Ariz. at 557, 724 P.2d at 1226 (no *per se* disqualification because judge presided over trial of codefendant); *In re Richard W., supra,* 91 Cal.App.3d at 968, 155 Cal.Rptr. at 17 (judge not disqualified because he heard the case of a codefendant); *People v. Neumann, supra,* 499 N.E.2d at 492 (trial judge not disqualified because he accepted guilty pleas from codefendants); *Jones v. State, supra,* 416 N.E.2d at 881–82 (judge not disqualified because he conducted court trial of codefendant).

▇▇▇▇ Our determination that Judge Goudy was not disqualified *per se* because he had presided at a codefendant's trial does not end our inquiry. Boyd argues that Judge Goudy was in fact biased or prejudiced against her because of his earlier participation in the trial of Woods. This is not, of course, an allegation of "personal misconduct" that would require the trial judge to permit another judge to decide the motion for recusal. *See Surratt v. Prince George's County,* 320 Md. 439, 466, 578 A.2d 745 (1990). With respect to a claim of actual prejudice made under these circumstances, it has been said that "[a] judge is presumed to be impartial," *United States v. Sidener,* 876 F.2d 1334, 1336 (7th Cir.1989); that "[a] judge is presumed not to confuse the evidence in one case with that in another," *Dove v. Peyton,* 343 F.2d 210, 214 (4th Cir.1965); and, that "judges are men [and women] of discernment, learned and experienced in the law and capable of evaluating the materiality of evidence," *State v. Babb,* 258 Md. 547, 550, 267 A.2d 190 (1970). As Blackstone put it, "the law will not suppose a possibility of bias or favour in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea." 3 W. Blackstone, *Commentaries of Laws of England* 361 (1st ed. 1769). Thus, where an allegation of actual bias or prejudice is made, the burden is upon the defendant to make

that showing from the record.  *Carey v. State, supra,* 43 Md.App. at 248–49, 405 A.2d at 296.

■ The defendant has not met her burden in this case. The record discloses that the trial judge, after having been fully apprised of the concerns of the defendant, determined that he could set aside any judicially acquired information that was not admissible against the defendant, and decide her case fairly and impartially, solely upon the evidence presented in her case.  We have examined the record of the earlier trial of *Woods,* as well as the record in the instant case.  We find nothing undermining either the general presumption that a trial judge can and will separate that which may be considered from that which may not, or which suggests that Judge Goudy failed to do so in this case, or was otherwise biased or prejudiced against the defendant by reason of his participation in Woods's case.  Unlike the case of *In re George G.,* 64 Md.App. 70, 494 A.2d 247 (1985), in which a statement made by the trial judge that the defendant "might be able to prove that he is innocent" supported the defendant's contention of a lingering bias, there is nothing in the record of this case to suggest that Judge Goudy was influenced by the testimony given in the previous case, or by any findings he had made based upon that testimony.

In the first trial, Woods was charged with murder, attempted murder (in connection with the attempt to dynamite the victim's automobile), conspiring with Donald Dare to dynamite the victim's car, and the use of a handgun in the commission of a felony.  The State called 16 witnesses to prove its case, including the detective who testified concerning the confession Woods had given.

In his confession, Woods admitted that after learning from Jody Boyd that her husband had been beating her and she "couldn't take it anymore," he agreed "to take care of her husband for her."  Woods said that he, James Hayes, and Donald Dare agreed "to take care of this."  He admitted that he had tried on two occasions to "blow up" the

victim in his car, and failing in those efforts, had lain in wait for the victim and shot him on the evening of 2 July 1987. He said he knew the victim would be in the parking lot at the time because Jody Boyd "was agreeing to send her husband out to Hardee's on this particular evening. . . ." The gun used to kill the victim was recovered from Woods's home.

James Hayes, who had agreed to testify for the State in return for the State's agreement that he would be tried as a juvenile, testified against Woods. Hayes testified to an attempt by Woods and Dare to blow up the victim's car, and said that Jody Boyd had given Woods a roll of black speaker wire before that attempt was made. Hayes said he drove Woods and Dare to the immediate vicinity of the victim's apartment on the night of the shooting. He said Dare had the pistol at first; Dare and Woods went through a wooded area to the apartment while Hayes waited in the car; Dare thereafter ran back, stating that Woods had shot the victim; and, Woods ran back shortly thereafter, carrying the gun.

Shirley Ann Rutherford testified in Woods's case that she had overheard Jody Boyd tell Michael Woods and another that "she wished they'd kill him and get it over with," and that Woods had replied, "we'll kill him—we'll get him."

Michelle Madden testified that before the shooting she had heard Jody Boyd complain on more than one occasion that she wanted to get rid of her husband. She testified petitioner said she wanted to put a hole in the brake fluid line of her husband's car, and had asked Woods if he knew how to do that.

Woods did not take the stand, or call any witnesses. His arguments were essentially as follows: his confession was not adequately corroborated; the testimony of Hayes, an accomplice, was not corroborated; the conspiracy, if any, took place in a different county; the "quarter stick" of explosives allegedly used was not dynamite; and, he could not be convicted of attempted murder because it was impos-

sible for a "quarter stick" of explosives attached to a car to kill anyone. Judge Goudy found Woods guilty on all counts.

It is immediately apparent that Judge Goudy was not confronted with any significant question bearing on the credibility of the witnesses testifying at the Woods trial. No testimony was offered to contradict the State's witnesses. Woods challenged the admissibility of his confession, but the confession was admitted and was supported by independent evidence of the *corpus delicti.* That, coupled with the other unrebutted evidence against Woods, clearly forecast the result which ensued.

Judge Goudy was not required to find that Jody Boyd had procured the death of her husband in order to find Woods guilty of murder. Nor, contrary to the argument advanced here, was Judge Goudy required to find that Jody Boyd was a conspirator in order to find Woods guilty of conspiracy. Woods was charged only with having conspired with Dare, not with Jody Boyd.

Most of the testimony presented at Woods's trial was also presented at petitioner's trial. In addition, petitioner's statement to the police was admitted. In her statement, she admitted speaking with Michael Woods about killing her husband. She said she had complained to Woods about physical abuse she was receiving from her husband. She admitted giving Woods a "stereo cable cord," but said she did not know what he intended to do with it. She admitted that "Mike [Woods] said he was going to do something but he didn't say when," and that Woods and Dare had discussed with her and a friend, Laura Dilley, the amount to be paid to Mike Woods. She said Woods told her of two attempts to blow up her husband's car, and that he was "going to try something different." She said Woods called her on the night of the shooting and asked if there was any way she could get her husband out of the apartment, and she replied "he's going out to Hardee's to get us cheeseburgers around 10:00." She explained she thought Woods "just wanted to come over and talk." She said her husband

left at 9:46 p.m. and she was told of the shooting at 10:05 p.m. Although at one point in her statement she said her first remark to Woods about killing her husband was given "in a laughing manner," she later said she agreed to pay Woods $1,800 for the murder, and that it was her idea to have her husband killed. She explained that her husband had "raped me three times in the past three months" and had "beat on me and the children for the past year."

Petitioner did not testify. She presented testimony from Laura Dilley about a bruise the witness had observed on petitioner's face. She proffered evidence from Ms. Dilley and other witnesses concerning bruises she and her children had displayed, and concerning complaints with respect to abusive conduct visited upon her and the children by her husband. She also proffered the testimony of psychologists that she was suffering from "battered wife's syndrome."

Judge Goudy held that the proffered testimony was insufficient to generate an issue of perfect or imperfect self-defense, and the defendant conceded that the evidence was insufficient to generate an issue of lack of criminal responsibility. The proffered testimony was, therefore, not introduced, and the defendant rested. The defendant argued that: 1) the evidence was insufficient to show that dynamite had been used; 2) the evidence did not show that the car to which the explosive was affixed belonged to the victim; and, 3) petitioner could not be convicted of murder because the evidence did not show that she was actually or constructively present at the scene of the murder.[5]

The evidence before Judge Goudy was compelling on the question of the petitioner's guilt in the three offenses for which she was convicted. Virtually all of the evidence that had been before Judge Goudy in Woods's trial was again

---

5. The State pointed out that an accessory before the fact to murder may be indicted and convicted of murder in the first degree. *Evans v. State*, 304 Md. 487, 533, 499 A.2d 1261 (1985). The State also argued that the evidence was sufficient to support a finding that the petitioner was a principal in the second degree to the murder.

before him in petitioner's trial, and it was again unrebutted. The single important exception was Woods's confession, which Judge Goudy considered in Woods's case, but which was not before him in petitioner's case.

■ We have already noted that the knowledge of Woods's confession, acquired by the judge in a prior judicial proceeding, is not, *per se*, a reason for disqualification. In an analogous situation, this Court has held that a trial judge sitting without a jury is not disqualified by having learned the details of a confession which he ruled inadmissible. In *State v. Hutchinson*, 260 Md. 227, 271 A.2d 641 (1970), we said:

[A]lthough opinion may have been to the contrary elsewhere, [footnote omitted] it is clear that we have consistently reposed our confidence in a trial judge's ability to rule on questions of admissibility of evidence and to then assume the role of trier of fact without having carried over to his factual deliberations a prejudice on the matters contained in the evidence which he may have excluded.

*Id.* at 236, 271 A.2d 641. We have also noted Judge Goudy's statement that he was confident of his ability to disregard evidence not admissible in the petitioner's case.

We reviewed the records of both trials in an effort to determine whether, under the circumstances of this case, there may have been some practical limitation on the ability of the judge to do that which he is ordinarily presumed competent to do. We find no such impediment. Nor do we find any statement of the judge which would remotely suggest that he was unable to, or did not, consider Jody Boyd's case in a fair and impartial manner, uninfluenced by the prior proceedings or the judgment in Woods's case.

■ Finally, petitioner argues that even if there was no actual impropriety in Judge Goudy hearing the successive trials of codefendants, he should have declined to do so to avoid the appearance of impropriety. It is, of course, important that the judicial process not only be fair, but that

it appear to be fair. The proper test for disqualification on the basis of an appearance of impropriety is well stated by the United States Court of Appeals for the Second Circuit:

[T]he test to be applied is an objective one which assumes that a reasonable person *knows and understands all the relevant facts*. [citations omitted.] We disagree with our dissenting colleague's statement that recusal based on an appearance of impropriety ... 'requires us to judge the situation from the viewpoint of the reasonable person, and not from a purely legalistic perspective.' Like all legal issues, judges determine appearance of impropriety—not by considering what a straw poll of the only partly informed man-in-the-street would show—but by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge. (Emphasis in original).

*In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1313 (2d Cir.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989). Applying that test to the facts of this case, it is clear that disqualification was not required to avoid even the appearance of impropriety.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.