*In the Matter of HRVC Limited Partnership*, No. 0543, September Term, 2023. Opinion by Albright, J.

**APPEAL AND ERROR**

A cross-petition for judicial review is required for an appellate court to revisit an issue decided by an administrative agency against the non-appealing party if a resolution of the issue favorable to the non-appealing party would require the appellate court to reverse or vacate the administrative decision.

**ZONING AND PLANNING – STANDARD OF REVIEW**

In appeals from a circuit court's judgment on an administrative zoning decision, the appellate court repeats the task of the circuit court, i.e., it determines whether the circuit court's review of the final zoning action of the local administrative body was correct.

**ZONING AND PLANNING – STANDARD OF REVIEW**

The appellate court evaluates an agency's decision regarding a zoning issue using the same standards used by the circuit court.

**ZONING AND PLANNING – STANDARD OF REVIEW**

Judicial review of a final zoning action by a local administrative body is narrow; it is generally limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determining if the administrative decision is premised upon an erroneous conclusion of law.

**ZONING AND PLANNING – STANDARD OF REVIEW**

An appellate court may reverse the decision of a local zoning body where the legal conclusions reached by that body are based on an erroneous interpretation or application of the zoning statutes, regulations, and ordinances relevant and applicable to the property that is the subject of the dispute.

**ZONING AND PLANNING – STANDARD OF REVIEW**

Appellate courts review legal questions or the agency's conclusions of law with respect to a zoning issue de novo.

**COURTS – PRESERVATION OF ERROR**

Appellate courts ordinarily will not decide any non-jurisdictional issues unless it plainly appears on the record to have been raised or decided below. Md. Rule 8-131(a).

**ADMINISTRATIVE LAW AND PROCEDURE – STANDARD OF REVIEW**

Appellate courts review factual questions and mixed questions of law and fact under the "substantial evidence" standard of review.

**ADMINISTRATIVE LAW AND PROCEDURE – STANDARD OF REVIEW**

The scope of judicial review of administrative fact-finding is a narrow and highly deferential one.

**ZONING AND PLANNING – SUBSTANTIAL EVIDENCE**

A conclusion by a local zoning board satisfies the substantial evidence test for judicial review of the board's decision if a reasonable mind might accept as adequate the evidence supporting it.

**ZONING AND PLANNING – SUBSTANTIAL EVIDENCE**

A determination of a local zoning authority should be upheld by a court if reasoning minds could reasonably reach the conclusion from facts in the record.

**ZONING AND PLANNING – SUBSTANTIAL EVIDENCE**

If substantial evidence supports the conclusion of the zoning agency, courts may not disturb that conclusion, even if substantial evidence to the contrary exists.

**ZONING AND PLANNING – STANDARD OF REVIEW**

Unless a zoning decision is premised on an error of law, the court's proper role is not to substitute its assessment of facts for those of the local zoning agency, but merely to evaluate whether the evidence before the agency was fairly debatable.

**ZONING AND PLANNING – SUBSTANTIAL EVIDENCE**

A zoning board's decision that a residential building would not satisfy a requirement to "support and enhance, but not overwhelm, other uses in the village center," was supported by substantial evidence where the residential building would have been the tallest structure in the village center, would have blocked sightlines to other uses in the village center, would have imposed a larger footprint than other uses, would have had inappropriate setbacks from the road, and would have exceeded the total square footage of other uses.

**ADMINISTRATIVE LAW AND PROCEDURE – STANDARD OF REVIEW**

An appellate court may reverse an administrative decision that is "arbitrary and capricious."

**ADMINISTRATIVE LAW AND PROCEDURE – STANDARD OF REVIEW**

A decision that is unreasonable or without a rational basis is arbitrary and capricious.

**ADMINISTRATIVE LAW AND PROCEDURE – STANDARD OF REVIEW**

The arbitrary and capricious standard of review is extremely deferential because it is a highly contextual determination.

**RES JUDICATA**

Res judicata requires a previous decision on the merits that decided an identical issue between identical parties.

**ADMINISTRATIVE LAW AND PROCEDURE – RES JUDICATA**

The principles of res judicata apply to administrative actions only in limited circumstances, and only when the administrative body is acting in a quasi-judicial capacity.

**ZONING AND PLANNING – RES JUDICATA**

Because zoning matters depend on unique facts and circumstances of a particular location and therefore must be analyzed individually, zoning matters are generally inapposite for res judicata.

**ADMINISTRATIVE LAW AND PROCEDURE – SCOPE OF REVIEW**

Appellate review of administrative decisions is limited only to the issues and concerns raised before the administrative agency and courts should not decide issues for the first time.

**APPEAL AND ERROR – PRESERVATION OF ERROR IN ADMINISTRATIVE PROCEEDING**

A party must raise an issue with sufficient precision and clarity before the administrative agency to preserve it for judicial review.

**ZONING AND PLANNING – INTERPRETATION OF ZONING ORDINANCES**

When the language of a zoning ordinance is substantively identical to the language of a statute in a similar legislative enactment, an appellate court applies a similar interpretation to the ordinance as it would to the statute.

**ADMINISTRATIVE LAW AND PROCEDURE – INTERPRETATION OF ZONING ORDINANCES**

Howard County Code of Ordinances § 16.207(b) requires the supplementation of an administrative record in a circuit court to occur through "oral evidence."

**COURTS**

The circuit court is presumed to know the law and apply it properly.

**ADMINISTRATIVE LAW AND PROCEDURE – RECUSAL**

Appellate courts review quasi-judicial administrative actions under an appearance of impropriety standard.

**ADMINISTRATIVE LAW AND PROCEDURE – RECUSAL**

When reviewing an administrative action for bias or an appearance of impropriety, an appellate court starts with the presumption of impartiality.

**ADMINISTRATIVE LAW AND PROCEDURE – RECUSAL**

The recusal decision for a quasi-judicial administrative decisionmaker is reviewed by appellate courts for an abuse of discretion.

**ADMINISTRATIVE LAW AND PROCEDURE – RECUSAL**

A party must file a timely motion to recuse an administrative decisionmaker as soon as the basis for recusal is known in order to initiate the recusal procedure.

**ADMINISTRATIVE LAW AND PROCEDURE – RECUSAL**

When an administrative decisionmaker's impartiality is questioned, the questioning party is entitled to rely on the decisionmaker's affirmance of impartiality until given reason to believe otherwise.

**ADMINISTRATIVE LAW AND PROCEDURE – RECUSAL**

An administrative decisionmaker may be biased if they have personal knowledge of disputed evidentiary facts, but knowledge or opinions based on evidence presented in the course of judicial proceedings is not "personal knowledge."

Circuit Court for Howard County
Case Nos. C-13-CV-22-000696; C-13-CV-22-000849

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 0543

September Term, 2023

_____

IN THE MATTER OF
HRVC LIMITED PARTNERSHIP

_____

Ripken,
Albright,
Wright, Alexander, Jr.,
    (Senior Judge, Specially Assigned),
JJ.

_____

Opinion by Albright, J.

_____

Filed: July 1, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

In this consolidated appeal,[1] Appellant, HRVC Limited Partnership, is a real estate developer that petitioned to redevelop the Hickory Ridge Village Center, one of the village centers in Columbia, Maryland. Like the parties, we refer to Appellant as "Kimco." With its redevelopment petition, Kimco wanted to add a four-story, 230-unit, mixed-use residential apartment building to the village center, among other changes.

The Appellee, the Howard County Zoning Board, "consist[s] of the members of the County Council." Howard County Code of Ordinances § 16.201(a). In other words, the County Council in Howard County, a five-member elected body, "added to its legislative hat another piece of headgear when it made for itself a zoning board hat" by legislative act in 1969. *Turf Valley Assocs. v. Zoning Bd. of Howard Cnty.*, 262 Md. 632, 643 (1971).

After hearings that spanned three years, the Howard County Council, sitting as the Howard County Zoning Board, denied Kimco's Petition because it was unconvinced that the proposed "residential use" would not "overwhelm" the village center's other "uses." Here, Kimco challenges that decision, along with the Zoning Board's decision not to disqualify one of its members for bias. In addition to the Zoning Board, Appellees include the Hickory Ridge Community Association and Joel Hurewitz, two of the

---

[1] There are two circuit court cases here because Kimco filed, and the circuit court later consolidated, two petitions for judicial review of the same Zoning Board decision. Following the Zoning Board's Decision and Order denying Kimco's Petition, Kimco moved for reconsideration of that Decision and Order before the Zoning Board. While Kimco's reconsideration motion was pending, Kimco filed its first petition for judicial review of the Decision and Order. After Kimco did so, the Zoning Board addressed and denied Kimco's reconsideration motion after a hearing. Kimco then filed its second petition for judicial review. Thereafter, the circuit court consolidated the two cases.

protestants who opposed Kimco's Petition. After the circuit court affirmed the Zoning

Board's decision denying the Petition, Kimco timely filed this appeal.

Kimco presents two issues, which we rephrase as follows:[2]

I. Did the Zoning Board err as a matter of law in concluding that Kimco's proposed "residential use" of the village center would overwhelm its other "uses"?

II. Was there substantial evidence to support the Zoning Board's conclusion that Kimco's proposed "residential use" would overwhelm the village center's other "uses"?

III. Was the Zoning Board arbitrary and capricious in concluding that Kimco's proposed "residential use" would overwhelm the village center's other "uses"?

IV. Was the Zoning Board's denial of Kimco's motion to disqualify Zoning Board member Deb Jung an abuse of discretion?

We affirm the Zoning Board's decision. We perceive no error in the Zoning

Board's interpretation of the relevant provisions of the Howard County Code of

Ordinances or the Howard County Zoning Regulations. The Zoning Board's conclusions

were supported by substantial evidence and were not arbitrary or capricious. As to Ms.

---

[2] In its brief, Kimco presented the following two questions:

1. Whether the Zoning Board's decision that the proposed residential use overwhelmed other uses in the Village Center was legally erroneous, arbitrary and capricious, and contrary to law when it was not supported by substantial facts in the record and was a departure from prior Zoning Board decisions without explanation or justification.

2. Whether Zoning Board Member Deb Jung's participation in the zoning hearings and deliberations deprived Kimco of its procedural Due Process right to a fair and impartial hearing.

Jung's disqualification (or not), we decline to reach much of Kimco's argument because it is not preserved. For the portion of Kimco's argument that is preserved, however, we conclude that the Zoning Board did not abuse its discretion in declining to disqualify Ms. Jung. Accordingly, we, too, affirm the Zoning Board's decision denying Kimco's Petition.

## PROCEDURAL AND FACTUAL BACKGROUND

To provide context for the issues in this appeal, we begin with a brief description of Howard County's process for considering proposals for the redevelopment of village centers. Next, we describe the process Kimco's Petition went through leading up to the Zoning Board hearings. We will then recount those portions of the Zoning Board hearings that are necessary to decide this appeal, the Zoning Board's Decision and Order, and the proceedings before the circuit court. Finally, we will address Kimco's contention that Ms. Jung should not have participated in this case. Although the disqualification of Ms. Jung was an issue that was raised relatively early on in the three years during which the Zoning Board held hearings on this matter, we defer discussion of Kimco's disqualification argument until after we address Kimco's substantive challenges to the Zoning Board's denial of its Petition. We do so because Kimco returned to, and attempted to expand on, the disqualification issue in the circuit court. By taking up the disqualification issue second, rather than first, we can address it all at once.

### A.    *Redevelopment Procedure in Howard County*

Howard County is zoned into various types of districts, each having different characteristics and allowing for different uses. Each type of district is described in and

3

governed by a different section of the Howard County Zoning Regulations ("HCZR").[3]

One type of district in Howard County is a "New Town District,"[4] which is a "floating

zone." HCZR § 125.0; *see also Howard Rsch. & Dev. Corp. v. Howard Cnty.*, 46 Md.

App. 498, 500 (1980). Floating zone districts "occupy the far end of the flexibility

continuum of zoning categories from Euclidean zones." *City of Hyattsville v. Prince

George's Cnty. Council*, 254 Md. App. 1, 43 (2022) (cleaned up). With floating zones,

"the local zoning authority establishes in its zoning ordinance a specific zoning

---

[3] Since the filing of Kimco's Petition, Howard County has amended its Zoning Regulations. Ordinarily, we might be called upon to determine whether these changes affect this case, as substantive changes to the law that occur during the pendency of zoning and land use litigation are presumed to apply "retrospectively to some extent[,]" *McHale v. DCW Dutchship Island, LLC*, 415 Md. 145, 171 (2010), while procedural changes enjoy no such presumption. Instead, procedural changes require an analysis of "what aspect of the administrative/adjudication process is changed, at what point in the administrative/adjudication process the change is made, and the question presented to the reviewing court." *Grasslands Plantation, Inc. v. Frizz-King Enter., LLC*, 410 Md. 191, 227–28 (2009). Here, the parties have not identified any ways in which the pertinent Zoning Regulations have changed since Kimco filed its Petition. Accordingly, we cite to the current Zoning Regulations. These are codified through Ordinance No. 64-2024 (ZRA-210), effective December 5, 2024 (Supp. No. 22), and are accessible online at: https://perma.cc/YH9X-QH4A.

[4] Section 125.0.A.1 of the HCZR defines "New Town" as follows:

> As used herein, the term "New Town" means an unincorporated city, town or village which:
>
> a. Is designated and planned as an economically and culturally self-sufficient community with a population of at least 20,000 inhabitants; and
>
> b. Is so designed and planned as to meet all of the requirements specified in this Section 125.0.

classification for a specific purpose or a class of purposes, but does not assign on the zoning map the classification to any property[.]" *Id.*

Among the requirements for a New Town District is the approval of a Preliminary Development Plan that lays out a general, but flexible, plan for development within the district. HCZR § 125.0.B.1.c. Currently, the Columbia New Town District ("Columbia") is the only district of its kind in Howard County.[5] Hickory Ridge is one of several villages in Columbia. Other villages include Wilde Lake and Long Reach.

Columbia's village centers, including those in Hickory Ridge, Wilde Lake, and Long Reach, are a feature of its Preliminary Development Plan. Village centers are "Mixed-Use" developments designed to be community focal points for the surrounding village neighborhoods. HCZR § 103.0.V. Village centers have various requirements for their characteristics and uses, including outdoor spaces, various commercial uses for the needs of village residents, community uses, and, central to this appeal, residential uses. HCZR § 103.0.V. A village center's residential uses must "support and enhance, but not overwhelm, other uses in the village center." HCZR § 103.0.V.

Projects to redevelop a village center are classified as "major"—as here—or "minor." HCZR § 125.0.J–K. A major village center redevelopment "includes any proposal to add residential uses, or to make a change in the permitted land use categories" that would require an amendment to the Preliminary Development Plan. HCZR

---

[5] *See* Howard County Zoning Map, available online at: https://perma.cc/WM78-WP9F.

§ 103.0.V.[6] Thus, for a major development of the village center, the owner of the village center (or a portion thereof) must petition to amend the Preliminary Development Plan.[7] HCZR § 125.0.J.1. Such petitions must be approved by the Howard County Zoning Board. HCZR § 125.0.J.5.

Before the Zoning Board evaluates a major village center redevelopment petition, however, the developer must complete several intermediate steps. First, they must notify the Board of Directors of the affected Community Association ("Village Board") and the Department of Planning and Zoning (the "Department") of their intent to redevelop. HCZR § 125.0.J.2.a. Then, after presenting the petition to the Design Advisory Panel and to the community for feedback, the petitioner may submit their proposal to the Department. HCZR § 125.0.J. During the Department's consideration of the petition, the Village Board may submit a Community Response Statement with the Village Board's own evaluation of the petition. HCZR § 125.0.J.3.b. Among the criteria the Community Response Statement should address is whether the petition conforms to any existing

---

[6] A "Minor Village Center Redevelopment" is any other redevelopment of a Village Center. HCZR § 103.0.V. Minor Village Center Redevelopment proposals have different approval processes, largely depending on whether boundaries have been established for the Village Center. HCZR § 125.0.K. The process for obtaining approval for Minor Village Center Redevelopments is provided in HCZR § 125.0.K.

[7] A petition to amend a Comprehensive Sketch Plan or a Final Development Plan can also kickstart the major redevelopment process in lieu of a petition to amend an approved Preliminary Development Plan. HCZR § 125.0.J.1. These kinds of petitions, however, are not at issue in this case.

Village Center Community Plan.[8] HCZR § 125.0.J.3.b.3.c. The Department includes the Community Response Statement, along with its own recommendations regarding the petition, in a Technical Staff Report that is submitted first to the Planning Board for review. HCZR § 125.0J.3.c.

Proceedings before the Planning Board and the Zoning Board (for the consideration of development plans such as Kimco's) are governed by Subtitle 2, "Zoning," of Title 16 of Howard County's Code of Ordinances ("HCCO"),[9] "Planning, Zoning and Subdivisions and Land Development Regulations." After receipt of the Technical Staff Report, the Planning Board holds public meetings on the petition before creating its own report. HCCO § 16.204(e). Once the Planning Board has done so, the Department submits the petition and all supporting documents to the Zoning Board. HCCO § 16.205(a)(5).

Hearings before the Zoning Board are also governed by the Rules of Procedure of the Howard County Zoning Board ("Zoning Board Rules").[10] *See* HCCO § 16.206

---

[8] The HCZR define a Village Center Community Plan as "[a]n advisory plan which has been developed by the community and endorsed by the Village Board." HCZR § 103.0.V.

[9] As with the HCZR, the Howard County Code has been amended since this case was initiated. Again, none of the changes affect this appeal, and we thus cite to the current version of the ordinances. *See generally* Code County of Howard, Maryland (Supp. No. 83) (codified through Bill No. 58-2024, adopted Nov. 6, 2024), available online at: https://perma.cc/5368-7ZDB.

[10] Like the HCZR and the HCCO, the Zoning Board Rules have also been amended since this case began. None of those changes affect this appeal, however, so we cite to the current version. *See generally* Rules of Procedure of the Howard County

(Zoning Board hearings on redevelopment petitions "shall be conducted in accordance with the rules of procedure adopted by the Zoning Board insofar as they do not conflict with the Howard County Administrative Procedure Act."). These rules of procedure govern both the Zoning Board and the rights of the participants during the hearings. *See generally* Zoning Board Rules.

The Zoning Board may approve a redevelopment petition only if it "finds that the petition complies with [the HCZR.]" HCZR § 125.0.J.5.c. In considering whether a redevelopment petition complies with Section 125.0.J.5.c, the Zoning Board must determine whether it "complies with the specific definition for a New Town Village Center[,]" among other requirements.[11] Because a New Town village center may only have residential uses that "support and enhance, but not overwhelm, other uses in the

_____

Zoning Board (as adopted Apr. 12, 2023), available online at: https://perma.cc/N9QY-2JDD.

[11] In total, the Zoning Board must make findings on:

(1) Whether the petition complies with the applicable general guides and standards set forth in Howard County Zoning Regulations Section 125.0.B.3;

(2) Whether the proposed Major Village Center Redevelopment complies with the specific definition for a New Town Village Center;

(3) Whether the petition complies with the Major Village Center Redevelopment criteria in Section 125.0.J.4.a.(8); and

(4) Regardless of the Zoning Board's findings on Subsections 5.a.(1) through (3) above, whether the petitioner's property is within the appropriate boundaries of the New Town Village Center.

HCZR § 125.0.J.5.a.

village center," HCZR § 103.0.V., a proposal that adds a new "residential use" must meet the same "support and enhance, but not overwhelm" requirement.

The Zoning Board must render its decision, including its findings, in a written Decision and Order. HCZR § 125.0.J.5. Within thirty days, a party to the proceeding, or any person or entity aggrieved by the Zoning Board's decision, may seek judicial review in the Circuit Court for Howard County. HCCO § 16.207(a). The circuit court's review is based on "the record of proceedings made before the Zoning Board[.]" HCCO § 16.207(b). "[T]he action of the Zoning Board shall be presumed by the court to be proper and to best serve the public interest." HCCO § 16.207(b). Thus, the circuit court may affirm the decision or remand for further proceedings. HCCO § 16.207(b). It may reverse or modify the Zoning Board's decision only on enumerated grounds if "the substantial rights of the appellants to a fair hearing before the Board and a fair decision by the Board may have been prejudiced[.]" HCCO § 16.207(b).

## B.  *The Hickory Ridge Village Center Redevelopment Petition*

Kimco petitioned to redevelop the Hickory Ridge Village Center, which consisted of "14.65 acres of land located generally at the southeast corner of the Cedar Lane intersection with Freetown Road, 6400-6480 Freetown Road (excluding 6440 Freetown Road)" in Howard County, Maryland. The Hickory Ridge Village Center included a 66,655-square-foot grocery building with in-line retail, a 29,912-square-foot multi-unit commercial building, a drive-through bank, an assisted living facility, a pedestrian promenade, a daycare center, and a motor vehicle fueling facility.

9

Kimco notified the Hickory Ridge Village Board of its Petition in 2015 and held numerous public meetings thereafter. Kimco then submitted its Petition to Hickory Ridge's Design Advisory Panel, as required in the HCZR. Based on feedback from the public meetings and the Design Advisory Panel's recommendations, Kimco adjusted its proposal. Specifically, Kimco reduced the height of the residential building it proposed from five stories to four and reduced the number of proposed apartment units from 300 to 230.

As adjusted, Kimco's Petition proposed several significant changes to the Hickory Ridge Village Center. First, the Petition called for demolition of the existing multi-unit commercial building and the existing bank in order to construct 35,216 square feet of new retail/commercial space and a new 3,229-square-foot drive-through bank. Two additional retail/restaurant buildings of 4,400 and 11,559 square feet would also be constructed. Second, the existing grocery store would receive two additions of 540 and 3,944 square feet in addition to architectural changes. Third, a new parking lot would replace the existing one. Fourth, Kimco would construct, as mentioned above, a new four-story mixed-use apartment building with 230 apartment units, a parking garage with 393 parking spaces, and 10,365 square feet of retail space. The setback for the apartment building would be a minimum of fifty-two feet from Cedar Lane and sixteen feet from Freetown Road, the two main streets in the vicinity. With these changes, the Petition received further review by the Village Board, Department, and the Planning Board before the Zoning Board hearings commenced.

### C.    *The Zoning Board Hearings*

Zoning Board hearings on Kimco's Petition began on July 24, 2019, and continued for the next three years.[12] The Zoning Board consisted of the five elected members of the Howard County Council: Deb Jung, Elizabeth Walsh, Opel Jones, Christiana Rigby, and David Yungmann. The Hickory Ridge Village Board and a group of community members opposed the Petition (the "Protestants"). We summarize what occurred before the Zoning Board to the extent necessary to decide this appeal.

1. Kimco's Motion to Disqualify Ms. Jung[13]

On July 24, 2019 (the first day of the Zoning Board hearings), Kimco noted that Ms. Jung had already voiced her opposition to its Petition and inquired if her disqualification would be necessary. Specifically, Ms. Jung, a long-time Hickory Ridge resident, had testified about Kimco's Petition during a January 4, 2018 Planning Board meeting while she was still a candidate for the County Council (and thus the Zoning

---

[12] Additional hearings occurred before the Zoning Board in this case on: September 4, 2019; November 13, 2019; January 15, 2020; January 29, 2020; February 5, 2020; April 12, 2020; June 3, 2020; June 10, 2020; June 24, 2020; July 22, 2020; September 30, 2020; October 21, 2020; November 18, 2020; January 6, 2021; January 27, 2021; February 24, 2021; September 29, 2021; and concluded with the Zoning Board's deliberations and oral denial of Kimco's Petition on December 1, 2021.

[13] We confine our review of Kimco's arguments to what is in the record from the oral arguments before the Zoning Board on November 13, 2019. Although the record suggests that Kimco filed a written motion to recuse and/or disqualify Ms. Jung, it is not in the record before us. We also note that under today's version of the Rules of Procedure of the Howard County Zoning Board, non-preliminary motions "shall be made by written motion." Rules of Procedure of the Howard County Zoning Board § 2.403(D)(5). This requirement was not in place, however, when the motion was filed.

Board). In response to Kimco's question whether Ms. Jung should disqualify herself for the matter, Ms. Jung stated that "[she] can remain impartial in [her] judgment of [the] case."

Kimco did not pursue the matter further, and the Zoning Board (including Ms. Jung) began to hear the merits of Kimco's Petition. During the first two days of the hearings, August 24 and September 4, 2019, evidence was presented by Department employees about the Department's evaluation of Kimco's Petition. Kimco's vice-president, Gregory Reed, also testified. Each witness was subject to cross-examination by the other parties as well as questioning by members of the Zoning Board, including Ms. Jung.

On September 20, 2019, Kimco filed a written motion to recuse or disqualify Ms. Jung.[14] Kimco argued that an appearance of impropriety existed due to Ms. Jung's testimony before the Planning Board in January 2018 and her questioning of Department employees and Mr. Reed. According to Kimco, because Ms. Jung's questioning of Department employees and Mr. Reed echoed the same concerns she raised in her Planning Board testimony, it appeared that Ms. Jung had already decided to vote against Kimco's Petition based on her predetermined personal opinions rather than the evidence presented to the Zoning Board.

---

[14] Because we review the Zoning Board's decision not to disqualify Ms. Jung, we refer to this issue as "disqualification" rather than "recusal" throughout this opinion.

12

After acknowledging that the disqualification motion was governed by the objective reasonableness standard, the Zoning Board denied Kimco's disqualification motion. In regard to the applicable standard for disqualification, the Zoning Board Chair, Ms. Walsh, said:[15]

> [I]t has to be at least an appearance of a pre-decision. It's not whether or not a pre-decision has been made. It's that it is the potential appearance of a pre-decision.
>
> . . .
>
> The standard is the appearance of a pre-decision[,] . . . to a reasonable person, to someone coming in here cold. If they were to sit in the back and not have any idea of going on [sic], would they hear the five of us asking questions and hear one of us asking questions in a way that causes them to think that person has already pre-determined how he or she will conclude.

Thereafter, the hearings on the Petition resumed.

After Kimco's motion to disqualify Ms. Jung was denied on November 13, 2019, Kimco never moved again for Ms. Jung's disqualification before the Zoning Board. As a result, Ms. Jung continued participating without further objection.

2. The Proposed Residential Building's Compliance With the HCZR

Although evidence was presented on each of the criteria laid out in the HCZR for approving Kimco's Petition, the evidence addressing whether the residential building would overwhelm other uses in the village center took center stage. Throughout the Zoning Board hearings, conflicting testimony and evidence were presented on whether

---

[15] Under the Zoning Board Rules of Procedure, "[a]ll matters of law raised by any person of record during a hearing shall be ruled on by the Chairperson . . . . The rulings of the Chairperson, subject to the concurrence of a majority of the Zoning Board, shall be final[.]" Rules of Procedure of the Howard County Zoning Board § 2.403(D)(8).

13

the proposed 230-unit residential building in Kimco's Petition would provide "[r]esidential uses, to the extent appropriate to support and enhance, but not overwhelm, other uses in the village center." HCZR 103.0.V.

Employees from the Department and Kimco's witnesses during its case-in-chief testified that the residential building would not overwhelm uses in the village center from a design standpoint. The Zoning Division Chief for the Department, Geoffrey Goins, testified that the façade of the building was "broken up horizontally and vertically to create an appropriate massing, and not overwhelm the other uses in the village center." According to Mr. Goins, whether the residential building would be overwhelming is "not a sheer square footage issue, as much as it is a design [issue]." Mr. Goins testified that "based on the recommendations from the Design Advisory Panel, [the Department] believe[s] that the design . . . doesn't overwhelm the other uses, actually supports the other uses." Amy Gowan, the Deputy Director of the Department, however, conceded that the Design Advisory Panel had not made findings on whether the proposed residential building was overwhelming, and that there was no "real definition" of "overwhelm."

Kimco's witnesses also said that residential uses would not be overwhelming based on metrics of comparative area and trip generation. Mr. Reed, Kimco's vice-president, noted that two thirds of the village center would still be dedicated to retail. Similarly, Kimco's planning and architecture consultant, Matthew Fitzsimmons, testified that residential uses would only occupy 30% of the total site area with the remaining 70% dedicated to retail; and, based on the metrics of building footprint or imperviousness, the

14

rooftops of residential and commercial uses are "pretty much comparable." According to Mr. Reed, retail uses would generate roughly 80% of trips to the village center after the construction of the apartment building.

Mr. Fitzsimmons explained that the proposed building would satisfy the requirements of the HCZR because "residential use" is a less intensive use than "retail use." Citing the International Building Code as calling for 60 square feet per person for "mercantile" uses as opposed to 200 square feet per person in residential spaces, Mr. Fitzsimmons opined that "even though [retail] is smaller in gross square footage it's much more intensively used and has the ability to have more people at the site at one time than what you would see in a larger volume of residential."

During the testimony of Mr. Fitzsimmons, Kimco proposed using the Merriam Webster dictionary definition for "overwhelm," since the term is not defined in the HCZR. *See* HCZR § 103.0 ("Terms used in these Zoning Regulations shall have the definition provided in any standard dictionary, unless specifically defined below or in any other provision of these Zoning Regulations."). Under its proposed definition, Kimco asserted that "overwhelm" means "to cover over completely; to overcome by superior force or numbers; [or] to overpower in thought or feeling."

Like the above witnesses, the Planning Board and the Department concluded that the residential building in the proposed redevelopment would not overwhelm other uses. In its Technical Staff Report, the Department noted, "the [Design Advisory Panel] found that the residential building does not overwhelm other uses. Rather, it supports and enhances them by providing a market for commercial uses, which contributes to the long-

15

term economic viability of the commercial center." The Planning Board concluded that "the proposed apartment building is not overwhelming or out of character architecturally, and will be a positive enhancement to the Village Center."

The Village Board concluded otherwise, though. The chair of the Village Board, Allison Sultan, testified that "the residential aspect of Kimco's plan most certainly overwhelms the retail component" of the village center because "[t]he mass and height of the residential building will submerge the retail core." The Village Board reached this conclusion by noting there would be 254,636 square feet of residential use (plus additional square footage for the proposed apartment parking garage) versus 105,100 square feet of retail use; the residential use building would be the tallest structure in the Hickory Ridge Village Center; and its proposed location along Cedar Lane would obscure the retail use buildings located behind it. The proposed setbacks from Cedar Lane and Freetown Road, Ms. Sultan testified, also needed to be increased. Additionally, Ms. Sultan noted that residents would have the "feeling" while shopping at the village center's retail of being in "the shadow of [the] apartment building."

Ms. Sultan's testimony closely reflected the Village Board's Community Response Statement, which concluded that "[t]he addition of a 254,636 [square foot], four-story, high-density apartment building consisting of 230 individual housing units will overwhelm retail usage and become the primary purpose of the Village Center." An addendum to the Community Response Statement was also presented to the Zoning Board. The addendum voiced support for Kimco's Petition if several conditions were met

16

but reiterated that the number of apartment units in Kimco's Petition would be overwhelming and requested that it be reduced.

The Protestants offered several reasons why the proposed apartment building would cause residential uses in the village center to overwhelm other uses. Numerous Protestants echoed the Village Board's position that the square footage of the apartment building would overwhelm the village center's other uses and that the "primary use" of the village center would become residential. The Protestants also contested Kimco's suggestion that the apartment building would not be overwhelming from a design standpoint. They testified that the apartment building would "overpower" the village center because it would "block the visibility of the retail area" from Cedar Lane, the main road in the area. Further, because the apartment building would be "a very large structure," it would "definitely overwhelm the actual village center merchant buildings," and its planned "overall . . . scale, volume, frequency and intensity of residential use so vastly overwhelm[s] all other uses at the village center for every metric." Protestants also expressed concerns that "the road and walkway design would not be safe."[16]

---

[16] During the Zoning Board hearings, the Protestants to Kimco's Petition presented the results of a community survey that was conducted regarding the Petition. The survey received 639 usable responses, and 176 comments were received specifically about the "Residential" aspect of the Petition. Although many of the community comments did not address the HCZR criteria directly, many of the concerns about the "overwhelming" nature of the apartment building were similar to the live testimony presented during the Zoning Board hearings.

3. The Zoning Board's Decision and Order

The Zoning Board denied Kimco's Petition after concluding that Kimco failed to "meet its burden" to persuade the Zoning Board that the proposed redevelopment complied with the applicable HCZR, particularly "that the residential uses do not overwhelm the other uses in the village center." Specifically, the Zoning Board determined:

> [T]hat the number of residential square feet of development proposed, as compared to the square feet of other uses, along with the number of residential units and the height and placement of the residential units, will "overcome" and "overpower" the other uses in the unique Hickory Ridge Village Center, both in the relative dimensions of the uses and the feeling the plan conveys.

Supporting this conclusion were findings of fact that the apartment structure would be the tallest structure in the village center, it would contain 254,000 square feet as opposed to 105,000 total square feet in the retail spaces, it would occupy 1.47 acres – nearly twice that of the new retail area, and that the Village Board's recommendations to reduce the number of units and the height of the apartment building had not been met. Taken together, the Zoning Board found:

> The number of residential units, the proportion of the [Hickory Ridge Village Center] area occupied by the residential structure as compared to non-residential uses, the overall area of the site dedicated to residential uses as compared to non-residential uses, as well as the height of the residential structure, are such that the Zoning Board is not persuaded that they avoid overwhelming the other uses in the [Hickory Ridge Village Center]. This is shown by the totality of the testimony and exhibits admitted into evidence, especially the testimony and the exhibits admitted during the testimony of Mr. Goins, Mr. Reed, Mr. Fitzsimmons, the Hickory Ridge Community Association, and numerous Opponent Parties . . . . The Zoning Board is not persuaded that the alleged lesser intensity of residential uses versus the other Village Center uses, as explained by Mr. Fitzsimmons, prevents the relative

18

square footage, height, number of units and setbacks of the residential use from overwhelming the other uses.

Accordingly, the Zoning Board issued its Decision and Order—with three members signing on[17]—denying Kimco's Petition.[18]

Kimco then petitioned the circuit court for judicial review.

### D.     *Circuit Court Proceedings*

Before the circuit court, Kimco presented two issues. These were (1) "whether the Zoning Board's failure to recuse Ms. Jung deprived Kimco of procedural Due Process to a fair and impartial hearing" and (2) "whether the Zoning Board's finding that the proposed residential use would overwhelm other uses in the Hickory Ridge Village Center was legally sufficient and supported by facts in the record."

While its petition for judicial review was pending, Kimco sought (and was allowed) to supplement the record before the circuit court. Kimco added documents that it had received from the Zoning Board in response to a request under the Maryland Public Information Act, along with interrogatory answers that described deleted text messages. According to Kimco, these emails and deleted text messages between Ms. Jung and

---

[17] Every Decision and Order requires signature from a simple majority of Zoning Board members. HCCO § 16.206.

[18] Ms. Walsh filed a concurrence noting that, although the finding that Kimco did not meet its burden to show the proposed residential uses would not overwhelm other uses in the village center, it was "the last of the individual required criteria deliberated upon by the body[,]" and the Zoning Board also engaged in methodical "consideration of several other failed proofs pertaining to several other individual required criteria[.]" Ms. Rigby filed a dissenting opinion to provide "additional thoughts and considerations" to benefit future Zoning Board proceedings. Dr. Jones did not file a separate dissent.

others showed (or implied, in the case of the deleted text messages) that Ms. Jung had improperly engaged in ex parte communications during the pendency of Kimco's Petition before the Zoning Board. After allowing Kimco to supplement the record with the documents, the circuit court then held oral argument on the merits of Kimco's petition for judicial review. Kimco did not, apparently, introduce (or ask to introduce) testimony regarding these supplementary documents to the circuit court.[19]

The circuit court affirmed the Zoning Board's decision denying Kimco's Petition. The circuit court's order did not specifically address the supplementary documents Kimco added to the record or Kimco's suggestion that Ms. Jung had engaged in ex parte communications during the pendency of the Zoning Board hearing. The order, in its entirety, said:

> After consideration of the entire record, all submissions by the parties, and the oral arguments at the April 20, 2023 hearing in the [Hickory Ridge Village Center] matter, the Court finds that the Howard County Zoning Board's Decision & Order was supported by substantial evidence, was not arbitrary and capricious, and was not contrary to law. Accordingly, the Howard County Zoning Board Decision & Order is hereby AFFIRMED[.]

Kimco timely filed this appeal. Additional facts are provided below as needed.

---

[19] We say "apparently" because Kimco has not supplied us all of the transcripts from the proceedings before the circuit court. For example, although the circuit court heard oral argument on Kimco's petition for judicial review on April 20, 2023, Kimco did not provide the transcript from that hearing. Before us, no party identifies anywhere in the circuit court proceedings where Kimco introduced, or sought to introduce, testimony about the ex parte communications it alleged Ms. Jung engaged in.

## MR. HUREWITZ'S ARGUMENT[20]

Preliminarily, Mr. Hurewitz asks us to "refer" this case back to the Howard County Council to make a final decision on Kimco's Petition legislatively, i.e., by passage (or not) of an original bill. He argues that the Zoning Board failed to comply with Section 202(g) of the Howard County Charter in the proceedings below when it made the final decision on Kimco's Petition quasi-judicially as the Zoning Board, rather than legislatively as the County Council. We decline to take up Mr. Hurewitz's argument, however, because his requested relief necessitates a cross-appeal—which he did not note.[21]

---

[20] To the extent that Mr. Hurewitz seeks affirmative appellate relief, it is not clear from the record that Mr. Hurewitz has standing to do so. *See Matter of Carpenter*, 264 Md. App. 138, 149–150 (2024) ("Generally, unless a statute authorizes otherwise, a party seeking judicial review of an administrative agency decision must establish that the party was (1) a party to the administrative proceedings, and (2) 'aggrieved' by the final decision of the agency."); *see also* HCCO § 16.207(a) (providing that any person "jointly or severally aggrieved by" a decision of the Howard County Zoning Board "and a party to the proceeding below[]" may "appeal to the Circuit Court for Howard County").

Below, Mr. Hurewitz did not petition for judicial review of the Zoning Board's decision. Instead, Mr. Hurewitz filed a "Response to Petition for Judicial Review," asserting that he was "a party to the proceedings before the Howard County Zoning Board[,]" and intended to "participate as an interested party in the above-captioned action for judicial review." In that response, Mr. Hurewitz did not affirmatively raise the arguments he raises here or allege that he was somehow "aggrieved" by the Zoning Board's decision.

In any event, and because none of the parties here have briefed this issue, we address Mr. Hurewitz's appellate arguments but only to show further why his arguments are not properly before this Court.

[21] Mr. Hurewitz also questions whether Kimco would agree that Ms. Jung could participate in a "boundary delineation" if the matter were remanded to the Zoning Board for approval of Kimco's Petition, as Kimco here requests. Given our conclusion regarding Ms. Jung's participation in the Zoning Board hearings, we need not address this issue.

21

Although he agrees with the Zoning Board's decision denying Kimco's Petition and opposes Kimco's contentions on appeal, Appellee Mr. Hurewitz argues that "this zoning case must be referred to the [County] Council for legislative approval as required by Section 202(g) of the Howard County Charter[.]" Section 202(g), he claims, requires that any amendment to the Howard County General Plan, HCZR, or Zoning Maps, must be done by legislative act from the Howard County Council. Taking the position that amending the Preliminary Development Plan as proposed by Kimco's Petition "constitute[s] an amendment, restatement and/or revision to the General Plan," Mr. Hurewitz asserts that the Zoning Board erred by failing to resolve the Petition legislatively.

We decline to take up this issue because it was not raised in a cross-petition for judicial review. *See, e.g.*, *Uninsured Emps.' Fund v. White*, 219 Md. App. 410, 422–23 (2014) (holding that a cross-petition for judicial review is necessary "for the circuit court to revisit an issue decided by the [administrative agency] against the non-appealing party that, if decided in that party's favor, would require that the circuit court *reverse or vacate* at least a portion of the [agency's] decision") (emphasis in original); *see also Darby v. Marley Cooling Tower Co.*, 190 Md. App. 736, 745 (2010) (holding that an appellee who raised an argument on appeal that did not constitute a ground for affirmance needed to raise the issue in a cross-petition for judicial review). Here, the relief Mr. Hurewitz requests in his appeal (i.e., that the Zoning Board must act legislatively rather than quasi-judicially) would require us to remand this case to the Zoning Board with directions that it then go to the Howard County Council to consider (and presumably enact) the Zoning

22

Board's decision legislatively. With no cross-petition filed by Mr. Hurewitz, we decline to address his claim for this relief.

**DISCUSSION**

I.     **The Zoning Board's determination that Kimco's proposed residential uses would overwhelm the Hickory Ridge Village Center's other uses was not legally erroneous.**

In appeals from circuit court judgments on administrative agency decisions, we "repeat the task of the circuit court, i.e., to determine whether the circuit court's review was correct." *City of Hyattsville*, 254 Md. App. at 23 (quoting *Colao v. Cnty. Council of Prince George's Cnty.*, 109 Md. App. 431, 458 (1996)). Thus, we analyze "the agency's decision using the same standards used by the circuit court." *City of Hyattsville*, 254 Md. App. at 23 (citing *Grant v. Cnty. Council of Prince George's Cnty.*, 465 Md. 496, 509 (2019)). Our review, however, is narrow and "is limited to determining whether there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *Kenwood Gardens Condominiums, Inc. v. Whalen Props., LLC*, 449 Md. 313, 325 (2016) (citing *Md. Aviation Admin. v. Noland*, 386 Md. 556, 571 (2005)).

When reviewing conclusions of law, we may reverse an administrative zoning decision if "the legal conclusions reached . . . are based on an erroneous interpretation or application of the zoning statutes, regulations, and ordinances relevant and applicable to the property that is the subject of the dispute." *Trinity Assembly of God of Balt. City v. People's Counsel for Balt. Cnty.*, 407 Md. 53, 78 (2008) (quoting *People's Counsel for*

23

*Balt. Cnty. v. Surina*, 400 Md. 662, 682 (2007)). We review legal conclusions de novo. *Grant*, 465 Md. at 509.

In its contentions of legal error, Kimco argues that the Zoning Board used the wrong criteria to evaluate Kimco's Petition. Kimco claims that the Zoning Board focused only on the physical attributes of Kimco's proposed residential building, particularly its square footage and height, rather than on the "uses" of the building. An evaluation of a building's "uses," in Kimco's view, requires consideration of its land area, the intensity of use, and purpose. According to Kimco, these are the only relevant criteria for comparing "uses" because they appear in the HCZR's definition of "accessory use" (that is, a "use or structure which is customarily incidental to the principal use or structure, serving no other use or structure, and which is subordinate in area, intensity and purpose to the principal use or structure"). HCZR § 103.0.A. Kimco concludes that area, intensity of use, and purpose are the criteria the Zoning Board should have used to evaluate whether the proposed residential building in Kimco's Petition would overwhelm other uses.

Kimco's "accessory use" argument is not preserved because it was not raised before, or decided by, the Zoning Board. *See* Md. Rule 8-131(a) ("Ordinarily, an appellate court will not decide any [non-jurisdictional] issue unless it plainly appears in the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."); *see also Ben Porto & Son, Ltd. v. Montgomery Cnty.*, 262 Md. App. 323, 367 (2024) ("A reviewing court 'may not pass upon issues presented to it for

the first time on judicial review and that are not encompassed in the final decision of the administrative agency.'") (citation omitted).

Before the Zoning Board, Kimco presented evidence about the project's area, intensity of use, and purpose relative to other uses. But Kimco did not contend that HCZR § 103.0.V's requirement that residential uses "support and enhance, but not overwhelm" other uses would be satisfied—as a matter of law—if a proposed residential use meets the definition of an "accessory use." Consequently, the Zoning Board never considered, let alone decided, this issue.

Even if Kimco's "accessory use" argument is preserved, we disagree that the analysis of whether a residential use overwhelms other uses is somehow limited by the HCZR's definition of "accessory use." Again, the HCZR require that a village center include "[r]esidential uses, to the extent appropriate to support and enhance, but not overwhelm, other uses in the village center." HCZR § 103.0.V. The HCZR do not define the term "overwhelm," either as a standalone term or by reference to the HCZR's "accessory use" definition. In other words, by its plain language, the HCZR do not confine the inquiry of whether a residential use overwhelms other uses simply to the determination of whether a residential use is "incidental" or "subordinate" to the village center's other uses by virtue of area, intensity of use, and purpose.

Moreover, when presenting its Petition to the Zoning Board, Kimco proposed a definition for "overwhelm" that did not incorporate the "accessory use" definition. Because the term "overwhelm" is not defined, the HCZR mandates the use of a standard dictionary definition. HCZR § 103.0. ("Terms used in [the HCZR] shall have the

definition provided in any standard dictionary, unless specifically defined below or in any other provision of these Zoning Regulations[.]"). To this end, Kimco proposed, and the Zoning Board used,[22] the Merriam Webster Dictionary definition of "overwhelm," which is "to cover over completely; to overcome by superior force or numbers; [or] to overpower in thought or feeling."[23] Under this definition, whether a residential use is (or is not) overwhelming does not turn solely on whether the residential use might qualify as "an accessory use."

We, therefore, see no merit in Kimco's contentions that the Zoning Board erred as a matter of law when, in considering whether Kimco's redevelopment proposal met the HCZR requirement that residential uses "support and enhance, but do not overwhelm, other uses in the village center[,]" the Zoning Board applied a definition of "overwhelm" that was something other than "accessory use."

II.     **Substantial evidence supports the Zoning Board's determination that Kimco's proposed residential uses would overwhelm the Hickory Ridge Village Center's other uses.**

We review an agency's factual determinations and its decisions about mixed questions of law and fact (whether an agency has correctly applied law to the facts) under the substantial evidence standard of review. *Crawford v. Cnty. Council of Prince George's Cnty.*, 482 Md. 680, 695 (2023). When doing so, our scope of review is

---

[22] The Zoning Board noted that, even under Kimco's proposed definition, the Zoning Board was unpersuaded that residential uses would not overwhelm other uses. We thus assume, without deciding, that Kimco's is the correct definition of "overwhelm."

[23] *See* "Overwhelm," Merriam-Webster, available online at: https://perma.cc/33WZ-XW6Q.

"narrow and highly deferential[.]" *Trinity Assembly*, 407 Md. at 78. This deference stems from our recognition that "the zoning agency is considered to be the expert in the assessment of the evidence, not the court." *City of Hyattsville*, 254 Md. App. at 24 (quoting *Cremins v. Cnty. Comm'rs of Wash. Cnty.*, 164 Md. App. 426, 437 (2005)). We thus uphold a factual determination or mixed question determination by a local zoning board if it is supported by "substantial evidence[,]" i.e., adequate evidence for a reasonable mind to reach the same conclusion. *City of Hyattsville*, 254 Md. App. at 24. This inquiry focuses on whether the conclusion the Zoning Board reached is supported by substantial evidence, and we will not disturb that conclusion merely because substantial evidence supporting a contrary decision may also exist. *Id.*

Kimco contends that it produced "unrefuted testimony" suggesting the residential use it proposed would be "subordinate" to the village center's commercial uses in terms of land area and intensity of use (considering pedestrian activity and vehicular traffic), and that the purpose of the residential use would be to support and enhance the commercial use. We disagree. The evidence before the Zoning Board was not unrefuted. To the contrary, testimony was presented that the proposed residential building would contain 254,636 square feet—nearly 150% of the 105,100 square feet of the village center's commercial uses, that the "primary use" of the village center would become residential with the addition of the proposed apartment building, that the design of the apartment building would overpower the village center, and that the "road and walkway design would not be safe."

More importantly, however, the relevant inquiry for the Zoning Board was not whether the residential use would be "subordinate" to the village center's commercial uses. Instead, the Zoning Board had to evaluate whether the proposed residential use would "support and enhance, but not overwhelm, other uses in the village center," HCZR 103.0.V, and the Zoning Board was not satisfied that Kimco's proposal met this definition. Moreover, evidence about the project's purpose, land area, and intensity of use was not the only evidence the Zoning Board considered. Kimco is not entitled to a reversal of the Zoning Board's decision merely because some of the evidence before the Zoning Board could have favored Kimco's position. *See City of Hyattsville,* 254 Md. App. at 24 ("If substantial evidence supports the conclusion of the zoning agency, the courts may not disturb that conclusion, even if substantial evidence to the contrary exists.") (cleaned up).

Kimco next argues that the Zoning Board improperly used the number of residential units, the square footage, and the height of the proposed residential building as proxies for "use" instead of comparing the uses. Kimco adds that the Zoning Board should not have focused on the subjective feelings of those who might encounter the proposed building. We disagree. Evidence as to how the size, bulk, and location of the proposed apartment building might affect individuals who are currently using the non-residential parts of the village center was clearly relevant to the issues before the Zoning Board. Given that Kimco itself proposed that the Zoning Board define "overwhelm" to mean "overcome by superior force or numbers; [or] to overpower in thought or feeling," Kimco cannot now complain that the Zoning Board used Kimco's proposed definition

and made the findings that definition required. *See State Roads Comm'n of Md. v. Orleans,* 239 Md. 368, 379 (1965) (providing an agency, in an appeal from a condemnation proceeding, "cannot now complain successfully" that its own objection was sustained in the proceedings below). Because no one contends that Kimco's definition of "overwhelm" was not a standard dictionary definition, we do not second-guess the Zoning Board's use of this definition. *See, e.g.*, *Crawford*, 482 Md. at 703–04 (noting that we do not disturb an agency's interpretation of zoning provisions that accord with their legislative history and common sense).

Even if the height of the building it proposed should be considered, Kimco argues that it "produced substantial evidence" showing the height of the proposed residential building would not be overwhelming. Again, however, we do not reweigh the evidence for ourselves during appellate review; rather, we limit our review to whether the evidence was "fairly debatable." *See City of Hyattsville*, 254 Md. App. at 24–25 ("[T]he court's proper role is not to substitute its assessment of the facts for those of the local zoning agency, but merely to evaluate whether the evidence before the agency was fairly debatable.") (cleaned up). Even if Kimco did produce substantial evidence showing the height of the proposed residential building would not overwhelm other uses in the village center, the fact that the Zoning Board could have reached an alternate conclusion is not enough to warrant reversal of the Zoning Board's decision. *Cremins*, 164 Md. App. at 438 (stating that Zoning Board decisions "are presumptively correct, if based upon substantial evidence, even if substantial evidence to the contrary exists").

Under the "overwhelm" definition that Kimco proposed, the Zoning Board acknowledged "the testimony and the exhibits admitted during the testimony of Mr. Goins, Mr. Reed, Mr. Fitzsimmons, the [Hickory Ridge Community Association], and numerous Opponent Parties[.]" In doing so, the Zoning Board considered the evidence regarding the proposed "number of residential units, the proportion of the area occupied by the apartment building as compared to non-residential uses, the overall area of the site dedicated to residential uses as compared to non-residential uses, as well as the height of the residential structure." The Zoning Board also considered the "alleged lesser intensity" of the proposed residential use but was "not persuaded that the alleged lesser intensity of residential uses versus the other Village Center uses, as explained by Mr. Fitzsimmons, prevents the relative square footage, height, number of units and setbacks of the residential use from overwhelming the other uses."

Ultimately, we are convinced that the Zoning Board's conclusion that Kimco's Petition did not satisfy the requirement that residential uses "support and enhance, but not overwhelm, other uses in the village center[,]" is supported by substantial evidence. The apartment building would be the tallest structure in the Hickory Ridge Village Center, would "alter the view of the village center from adjacent roads" and "block sight lines to the retail uses," would occupy twice the footprint of the new retail, would have inappropriate setbacks from surrounding roads, and would exceed the total square footage of other uses in the Hickory Ridge Village Center by nearly 150,000 square feet. This evidence is more than "adequate" for a "reasonable mind" to reach the conclusion the Zoning Board did here. *See City of Hyattsville*, 254 Md. App. at 24 ("A conclusion by a

local zoning board satisfies the substantial evidence test if 'a reasonable mind might accept as adequate' the evidence supporting it."). Accordingly, we conclude that the Zoning Board's decision was supported by substantial evidence.

### III. The Zoning Board's determination that Kimco did not meet its burden to prove residential uses would not "overwhelm" other uses of the Hickory Ridge Village Center was not arbitrary and capricious.

We may also reverse a zoning board decision if it is "arbitrary and capricious." *Cnty. Council of Prince George's Cnty. v. Zimmer Dev. Co.*, 444 Md. 490, 573–74 (2015). A decision is arbitrary and capricious if it is "unreasonable or without a rational basis." *Dep't of Hum. Res., Balt. City Dep't of Soc. Servs. v. Hayward*, 426 Md. 638, 647 (2012) (cleaned up) (quoting *Harvey v. Marshall*, 389 Md. 243, 297 (2005)). *See also, e.g.*, *Rogers v. Eastport Yachting Ctr., LLC*, 408 Md. 722, 727–28 (2009) (holding that an agency's failure to provide a basis to support its findings was arbitrary and capricious). Importantly, our "arbitrary and capricious" standard of review is "extremely deferential" to an agency's determination because it is "highly contextual." *Md. Small MS4 Coal. v. Md. Dep't of the Env't*, 479 Md. 1, 30 (2022).

Kimco argues that the Zoning Board's decision that Kimco did not meet its burden to show that the proposed residential use would not overwhelm other uses was arbitrary and capricious. Specifically, Kimco emphasizes that the Zoning Board approved redevelopment petitions for two other village centers (Wilde Lake and Long Reach) under similar circumstances. Kimco argues that the "proposed residential square footage [in its Petition] represents a lower percentage of the overall square footage than what was proposed and approved in both Wilde Lake and Long Reach, and the disparity between

31

residential and commercial building heights is much less [in the Hickory Ridge Village Center Petition] than [what] the Zoning [B]oard approved in Wilde Lake." This inconsistency, Kimco argues, violates the principle that "an administrative agency may not merely change its mind from prior rulings[.]" We are not persuaded by these arguments.

As we understand it, the crux of Kimco's argument is that res judicata (or prior rulings) bar the Zoning Board from reaching a different decision on Kimco's Petition than it did on the Long Reach and Wilde Lake petitions. For this argument, Kimco relies on *Gaywood Cmty. Ass'n v. MTA*, 246 Md. 93 (1967), for its asserted proposition that an administrative agency cannot just change its mind from its previous rulings. In particular, Kimco quotes that:

> It has been held that the principles of the doctrine of res judicata do not apply where the earlier decision as well as the later decision is made by an administrative agency. **But this does not mean that such agencies are completely free to disregard prior rulings, for it is well settled that a mere change of mind is not an adequate or valid reason for reversing a previous finding.** On the contrary, there must be evidence of fraud, surprise, mistake, inadvertence or some change in fact or in law in order to justify the reversal.

*Gaywood*, 246 Md. at 99 (emphasis added by Kimco). *See also Sizemore v. Chesapeake Beach*, 225 Md. App. 631, 663 (2015) ("[U]nder certain circumstances, such as where an administrative agency is performing a quasi-judicial function, the principles of res judicata are applicable.").

We see no error in the Zoning Board having reached a different decision on Kimco's Hickory Ridge Village Center Petition than it did on the Long Reach and Wilde

Lake petitions. "[T]he principles of res judicata apply [only] to the present matter involving two decisions of the same administrative body regarding the application of the same facts and law." *Sizemore*, 225 Md. App. at 663. In other words, res judicata requires a previous proceeding deciding an identical issue between identical parties with a final judgment made on the merits. *Cicala v. Disability Rev. Bd. of Prince George's Cnty.*, 288 Md. 254, 263 (1980). Res judicata does not apply here because the Zoning Board has not made a prior decision on the redevelopment proposal at issue in this appeal.

Even if the Zoning Board's decisions regarding Wilde Lake and Long Reach somehow have preclusive effects as "prior rulings," we could not ignore the fact that the Hickory Ridge Village Center is unique—a substantial enough "change in fact" to justify a different outcome. *See, e.g.*, *Red Roof Inns, Inc. v. People's Counsel for Balt. Cnty.*, 96 Md. App. 219, 227–28 (1993) ("Zoning matters . . . depend upon the unique facts and circumstances of a particular location and must be analyzed individually."). Here, the Zoning Board considered the unique characteristics of Kimco's Petition and the Hickory Ridge Village Center. Indeed, before concluding that Kimco's proposed residential building failed to satisfy the HCZR, the Zoning Board noted the proposed apartment building's location and setbacks in the Hickory Ridge Village Center in *addition* to its height and square footage. Thus, the fact that the Zoning Board approved redevelopment petitions for other Columbia village centers, with residential buildings sharing some characteristics with the apartment building proposed for Hickory Ridge Village Center, is not a basis to conclude that the Zoning Board's denial of this Petition was arbitrary and capricious.

**IV.    The Zoning Board did not abuse its discretion by denying Kimco's motion to disqualify Ms. Jung.**

Kimco next asserts that the Zoning Board's denial of Kimco's motion to disqualify Ms. Jung on November 13, 2019, was an abuse of discretion and tainted the entire proceedings. Kimco focuses first on Ms. Jung's conduct that pre-dated the Zoning Board hearings, second on her conduct during the Zoning Board hearings, and third on what Kimco contends are Ms. Jung's ex parte communications. We conclude that most of Kimco's arguments are unpreserved. As for Kimco's arguments that are preserved, we see no abuse of discretion in the Zoning Board's decision not to disqualify Ms. Jung.

### A.    *Ms. Jung's Conduct After the Zoning Board Denied Kimco's Disqualification Motion*

We first address Ms. Jung's conduct during the period between the Zoning Board's denial of Kimco's motion to disqualify Ms. Jung (November 13, 2019) and the conclusion of the Zoning Board hearings (December 1, 2021). Kimco argues that during this period, Ms. Jung acted with improper bias and created an appearance of impropriety. We decline to take up this argument because Kimco never raised it before the Zoning Board.

"Under settled Maryland law, appellate review of administrative decisions is limited to those issues and concerns raised before the administrative agency." *Chesley v. City of Annapolis*, 176 Md. App. 413, 426 n.7 (2007). *See also* Md. Rule 7-208 (providing that "[a]dditional evidence in support of or against the agency's decision is not allowed unless permitted by law"). In other words, courts engaging in judicial review of administrative proceedings should not, for the first time, decide an issue in the case. *See*

34

*Ben Porto & Son, Ltd. v. Montgomery Cnty.*, 262 Md. App. 323, 367 (2024) ("A reviewing court 'may not pass upon issues presented to it for the first time on judicial review and that are not encompassed in the final decision of the administrative agency.'") (quoting *Dep't of Health & Mental Hygiene v. Campbell*, 364 Md. 108, 123 (2001)). *See also Colao v. Md.-Nat'l Cap. Park & Plan. Comm'n*, 167 Md. App. 194, 201 (2005) ("*A party* who knows or should have known that an administrative agency has committed an error and *who*, despite an opportunity to do so, *fails to object* in any way or at any time *during the course of the administrative proceeding, may not raise an objection for the first time in a judicial review proceeding*.") (quoting *Cicala*, 288 Md. at 261–62) (emphasis added in *Colao v. Md.-Nat'l Cap. Park & Plan. Comm'n*). This is true even for constitutional issues. *Yim, LLC v. Tuzeer*, 211 Md. App. 1, 49 (2013) (citing *Prince George's Cnty. v. Ray's Used Cars*, 398 Md. 632, 651 (2007)).

We adhere to this rule in order to give administrative agencies the opportunity to decide an issue before a court does. *Ben Porto & Son, Ltd.*, 262 Md. App. at 367. Otherwise, the reviewing court could supplant the agency's jurisdiction and expertise by setting aside an agency decision on a ground not presented to the agency itself. *Cap. Com. Props., Inc. v. Montgomery Cnty. Plan. Bd.*, 158 Md. App. 88, 96–97 (2004). *See also Concerned Citizens of Cloverly v. Montgomery Cnty. Plan. Bd.*, 254 Md. App. 575, 600 (2022) ("[J]udicial review of the actions of an administrative agency is restricted primarily because of the fundamental doctrine of separation of powers as set forth in Article 8 of the Declaration of Rights of the Maryland Constitution.") (further citation omitted).

For an issue in an administrative proceeding to be preserved for judicial review, it must be "raised with sufficient precision, clarity, and emphasis to give the agency a fair opportunity to address it." *Concerned Citizens of Cloverly*, 254 Md. App. at 602 (cleaned up). "[A] passing reference to an issue, without making clear the substance of the claim, is insufficient to preserve an issue for appeal, particularly in a case with a voluminous record." *Id.* at 603.

Kimco now identifies three occurrences during the Zoning Board hearings and argues that Ms. Jung's statements during these occurrences should have led to her disqualification. These were the Zoning Board's discussion about (a) admitting the Community Response Statement addendum;[24] (b) the discussion about designating Christopher Alleva as an expert witness;[25] and (c) deliberating the matter (deliberations

---

[24] During Ms. Sultan's testimony on behalf of the Village Board, an addendum to the Community Response Statement was introduced. It was objected to by the Protestants, and its admissibility was subject to a lengthy debate. In particular, the Protestants noted the significance of the Community Response Statement to the Major Village Center Redevelopment process and their concerns that the addendum had not been created through the proper process. Ms. Jung, as a compromise, suggested that the Community Response Statement addendum be admitted but that it be called something else. Ultimately, Dr. Jones (the chairman of the Zoning Board at the time) ruled that the objections to the Community Response Statement addendum be deferred. Ms. Jung moved to overrule Dr. Jones's ruling, but her motion did not pass.

[25] Ultimately, Mr. Alleva's testimony was not treated as expert testimony. Mr. Alleva's CV showing his professional experience in zoning matters and his past testimony in other zoning cases was admitted, without objection. After discussing whether Mr. Alleva's testimony should then be admitted as expert testimony, the Zoning Board's legal counsel explained to Dr. Jones that it was his decision, subject to a majority vote by the Zoning Board members, whether to do so. Dr. Jones inquired into whether a Zoning Board member would move to deem Mr. Alleva as an expert, and Ms. Jung made a motion to do so. A vote was called on the motion, and it did not pass.

were public). As to Ms. Jung's comments during the Zoning Board's deliberations, Kimco asserts she improperly "repeated the opposition points she had raised during her Planning Board testimony."

Kimco's arguments are not preserved because it did not raise them before the Zoning Board.[26] As a result, we cannot say that these contentions were "raised with sufficient precision, clarity, and emphasis to give the [Zoning Board] a fair opportunity to address [them]." *See Concerned Citizens of Cloverly*, 254 Md. App. at 602 (quotation omitted). Accordingly, we decline to address this part of Kimco's argument.

### B.     Ms. Jung's Alleged Ex Parte Communications

Kimco next asserts that Ms. Jung's alleged ex parte communications,[27] which Kimco discovered after it had filed its petition for judicial review of the Zoning Board's

___

[26] Granted, Kimco was unable to object during the Zoning Board's oral deliberations on December 1, 2021. However, Kimco made no attempt to raise its concerns about Ms. Jung's conduct during the deliberations until more than a year later when, in the circuit court, it filed its memorandum in support of judicial review.

Additionally, Kimco filed a motion for reconsideration after the Zoning Board issued its decision and order denying Kimco's Petition. Kimco did not raise these grounds for Ms. Jung's recusal in their motion for reconsideration either.

[27] In total, Ms. Jung corresponded with eight different individuals between May 10, 2020, and February 16, 2022. The bulk of these emails were expressions of gratitude or disagreement towards Ms. Jung's position toward the Petition—sent after the Zoning Board had deliberated and orally voted to deny the Petition. Several of the emails were also sent to other Zoning Board members, too. Two of the emails Ms. Jung received before the Zoning Board denied Kimco's Petition, however. These were in response to the Zoning Board's vote to have the Protestants' case-in-chief presented virtually during the COVID-19 pandemic (a decision that Ms. Jung voted against). One of the emails, in addition to laying out numerous reasons supporting the individual's request for the

Zoning Board to reconsider its decision to move the hearings online, concluded with the following statements:

> Kimco uses an insincere interest in the Hickory Ridge Village Center redevelopment to push residential apartments in an area zoned for single family homes while undermining long term village center tenants and forcing them out. The developers have been dishonest about traffic impact, height exceptions from the zoning rules for the project, and pedestrian safety. I lived at Alta Wilde Lake for one year and did not enjoy the experience. There was no place for dogs to poo, shoddy construction and very thin walls, a super large imposing building, illegal drugs and dog pee in the halls and elevator, insufficient trash control and parking all for $3000 a month. There is more than adequate rental units in zip code 21044. The rental occupancy facts do not support the need for more rental units especially in light of COVID 19 economic projections. Empty units in a luxury building can result in acceptance of less qualified tenants with the associated problems which negatively [sic] communities. Kemco [sic] has not met the burden of proof for a height and residential use exception to the zoning rules.

Ms. Jung responded to this email as follows:

> As a zoning board member, I am not allowed to answer you directly about your concern. Normally, we would not even be able to read or respond to emails about a case before us but, given that this is an administrative matter that does not go to the merits of the case, I feel that reading your email and letting you know that I have received it is within the bounds. Thank you for sharing your concerns.

Additionally, Kimco included interrogatories from Case No. C-13-CV-22-000649, a mandamus action that Kimco had filed against the Zoning Board for failure to fill Kimco's Public Information Act request. Kimco focused on the following interrogatory response in particular:

> On occasion, Ms. Jung has exchanged text messages with Chris Alleva, none of which were related to the Hickory Ridge Zoning Board case, to the best of her recollection. Ms. Jung regularly deletes all of her cell phone texts, so she does not recall the specific topics that were discussed. No messages related to the Public Information Act request have at any time been deleted. Ms. Jung did not exchange text messages with anyone else on the list of people between July 2019 and July 2022.

denial of its Petition, "further evidence her bias." Kimco asserts that these ex parte communications reveal Ms. Jung's lack of impartiality, and that because the Zoning Board did not disqualify Ms. Jung, the Zoning Board's decision should be reversed. We decline to reach this argument as well, because Kimco did not preserve it before the circuit court or the Zoning Board.

The claim was never preserved before the Zoning Board because Kimco never moved the Zoning Board to disqualify Ms. Jung based the alleged ex parte communications. Thus, the alleged ex parte communications were never put in the administrative record. To be sure, Kimco did not discover evidence of the communications until after it had petitioned the circuit court for judicial review. But, in the circuit court, Kimco never moved to have the matter remanded to the Zoning Board so that it could consider the issue first. *See* HCCO § 16.207(b) ("The court may affirm the decision of the Zoning Board or remand the case for further proceedings[.]"). In the absence of a remand, the Zoning Board never had the opportunity to consider whether the alleged ex parte communications warranted Ms. Jung's disqualification.

Before the circuit court, Kimco did not preserve its claim either. As above, and because Kimco did not move for remand to the Zoning Board, Kimco's argument on this issue (i.e., that reversal was called for because while the matter was before the Zoning Board, Ms. Jung had engaged in ex parte communications) was premised on allegations

39

of procedural irregularities[28] that were "not shown on the record" before the Zoning Board. As an exception to the rule that confines judicial review to the record from the Zoning Board, the circuit court may take up such alleged procedural irregularities, but only upon testimony offered before the circuit court. *See* HCCO § 16.207(b) ("In cases of alleged irregularities in procedure before the Zoning Board amounting to a denial of due process, not shown on the record, *testimony* thereon may be taken in the court.") (emphasis added). To this Court, Kimco does not point out anywhere where it offered testimony about Ms. Jung's alleged ex parte communications to the circuit court.[29]

---

[28] In that Zoning Board Members are prohibited from having ex parte communications during the pendency of a Petition, such a violation may have amounted to an "irregularit[y] in procedure before the Zoning Board amounting to a denial of due process[.]" HCCO § 16.207(b).

[29] The other consequence of Kimco's failure to seek a remand to the Zoning Board or to call Ms. Jung as a witness before the circuit court is that Kimco never put its claim of bias before her. In *Balt. Cotton Duck, LLC v. Ins. Comm'r of Md.*, 259 Md. App. 376 (2023), for example, we dismissed an appellant's claim of judicial bias because they did not adequately raise it before the allegedly biased judge. In doing so, we reiterated the following four requirements to preserve allegations of a trial judge's bias:

> (1) facts are set forth in reasonable detail sufficient to show the purported bias of the trial judge; *(2) the facts in support of the claim must be made in the presence of opposing counsel and the judge who is the subject of the charges;* (3) counsel must not be ambivalent in setting forth his or her position regarding the charges; and (4) the relief sought must be stated with particularity and clarity.

*Id.* at 401 (emphasis added) (quoting *Braxton v. Faber*, 91 Md. App. 391, 408–09 (1992)). Here, by failing to confront Ms. Jung or the Zoning Board with the asserted ex parte communications, Kimco failed the second preservation requirement to put its claim of bias before the factfinder it claims is biased.

In this context, our analysis in *Maryland General Hospital v. Maryland Health Resources Planning Commission,* 103 Md. App. 525 (1995), is instructive. At issue in *Maryland General Hospital* was a provision of the State's Administrative Procedure Act, § 10-222(g)(2) of the Maryland Code, State Government Article ("SG"). This section, which is part of the Act's definition of the scope of judicial review of agency decisions, permits a party to "offer *testimony* [to the circuit court] on alleged regularities in procedure before the presiding [agency] officer that do not appear on the record." Md. Code, SG § 10-222(g)(2) (emphasis added). In *Maryland General Hospital*, the appellant sought to offer documents to the circuit court that were not in the administrative record. 103 Md. App. 525. We reviewed SG § 10-222(g)(2) in the overall context of the statutory scheme and determined that "the Legislature intended § 10-222(g)(2) to allow only 'testimony' in its more narrow sense of oral evidence." *Id.* at 538. Because the appellant only sought to offer the additional evidence in the form of documents, we held that "§ 10-222(g)(2) therefore has no application." *Id.*

The relevant language in HCCO § 16.207(b) is substantively identical to SG § 10-222(g)(2).[30] Appearing as it does in a similar legislative enactment, we give HCCO § 16.207(b)'s reference to "testimony" its plain meaning; it encompasses "oral evidence," not documents.

---

[30] HCCO § 16.207(b) states in pertinent part (emphasis added):

In cases of alleged irregularities in procedure before the Zoning Board amounting to a denial of due process, not shown on the record, *testimony thereon may be taken in the court.*

41

Arguing that we should consider the communications that purportedly evidence Ms. Jung's bias, Kimco points out that the circuit court permitted its record to be supplemented with them. The communications "occurred during the pendency of the case and prior to the issuance of the [Decision and Order by the Zoning Board]." Kimco adds that some of the emails related "directly to the merits of the case," and that Ms. Jung's "spoliation" of the text messages should create "an adverse inference that the text messages . . . were impermissible *ex parte* communications."

Even if the communications Kimco added into the circuit court's record support the inferences that Kimco posits (an issue we do not reach), Kimco fails to show (1) how the scope of the court's authority in a judicial review proceeding would have permitted the court to consider these communications, or (2) whether the circuit court actually did consider them. Although the circuit court's order noted that it had considered "the entire record" and "all submissions by the parties," the circuit court never explicitly made factual findings on Kimco's claim of bias (based on ex parte communications). Moreover, we apply the "well-established principle that [circuit court] judges are presumed to know the law and to apply it properly." *Aventis Pasteur, Inc. v. Skevofilax*, 396 Md. 405, 426 (2007) (cleaned up). Given that the ex parte communications were not part of the Zoning Board record, that the Zoning Board had not passed on the issue, that the circuit court had not received testimony on the issue (or even a request to take testimony), and that the circuit court did not make findings on the matter, we presume that the circuit court properly applied the law, did not exceed its scope of review, and did not reach the issue of the alleged ex parte communications. We shall not either.

## C.     *The Zoning Board's Denial of Kimco's Motion to Disqualify Ms. Jung*

On November 13, 2019, before the Zoning Board, Kimco moved to disqualify Ms. Jung. The Zoning Board voted to deny this motion. Here, Kimco challenges this denial.

Kimco argues that the Zoning Board abused its discretion by failing to grant its disqualification motion. Pointing to Ms. Jung's Planning Board testimony, Kimco asserts that "at a bare minimum, [this testimony created] an appearance that she was predisposed against the Petition." Kimco argues that the testimony exhibited Ms. Jung's involvement in the creation of the Community Response Statement and its recommendation of denial, which is "almost word for word the reason for denial provided in the [Decision and Order]." Regarding Ms. Jung's examinations of Ms. Gowan and Mr. Reed, Kimco argues Ms. Jung engaged in questioning about issues that were not relevant to the approval criteria required by the HCZR and expressed her own personal beliefs. Kimco adds that the tone and phrasing of Ms. Jung's questions "demonstrated animus and were akin to those of an adverse party, not a fair and impartial decision-maker." Finally, Kimco argues that the Zoning Board applied the incorrect legal standard, and instead "focused on whether the granting of the motion would discourage board members from asking questions."

We begin our analysis of actual bias or an appearance of impropriety in quasi-judicial settings—including "the participation of members of Maryland administrative agencies performing quasi-judicial or adjudicatory functions"—with the presumption of impartiality. *Kenwood Gardens*, 449 Md. at 339 n.9 (citing *Regan v. State Bd. of*

*Chiropractic Exam'rs*, 355 Md. 397, 410 (1999)). In light of this presumption, "[t]he recusal decision, therefore, is discretionary, . . . and the exercise of that discretion will not be overturned except for abuse." *Jefferson-El v. State*, 330 Md. 99, 107 (1993) (citation omitted). In determining whether there is an appearance of impropriety, we use an objective standard and ask "whether a reasonable member of the public knowing all of the circumstances would be led to the conclusion that the judge's impartiality might reasonably be questioned." *Regan*, 355 Md. at 411 (quoting *In re Turney*, 311 Md. 246, 253 (1987)). Moreover, "a party must file a timely motion in order to initiate the recusal procedure." *Miller v. Kirkpatrick*, 377 Md. 335, 358 (2003). Lest it become "a weapon to use only in the event of some unfavorable ruling[,]" a motion for recusal or disqualification should, generally, "be filed 'as soon as the basis for it becomes known and relevant.'" *Id.* (quoting S*urratt v. Prince George's Cnty.*, 320 Md. 439, 468–69 (1990)).

Preliminarily, the Zoning Board and the Hickory Ridge Community Association argue that Kimco waived its disqualification motion when it failed to move for Ms. Jung's disqualification on July 24, 2019, the first day of the Zoning Board hearing. We disagree. A motion for recusal (or here, disqualification) should be made "as soon as the basis for it becomes known and relevant." *Surratt*, 320 Md. at 468–69. Certainly, Kimco knew that Ms. Jung would become a member of Howard County's Zoning Board by virtue of her election to the Howard County Council in November 2018. Kimco also knew of Ms. Jung's January 2018 statements expressing disappointment with the Department's report and her views that the Department failed to consider the Village

44

Board's Community Response Statement and recommendations. But Ms. Jung also said that she could remain impartial in considering Kimco's Petition when Kimco's counsel asked her at the first Zoning Board hearing:

> [KIMCO'S COUNSEL]: I have to note for the record that Ms. Deb [Jung], who is sitting as a zoning [board] member tonight, previously testified at the planning board meeting for this case [on] January 4th of 2018 before she was elected to the county council on this zoning board. We, the petitioners, are duty bound to ask the question of Ms. [Jung] as to whether she should disqualify herself from the case because her impartiality can be reasonably questioned in this case, and it is a question that we're asking. It's not a motion. We throw that out there today for her to consent.
>
> [MS. JUNG]: I will respond to that question, and I will tell you and anybody else here that I can remain impartial in my judgment on this case.
>
> [KIMCO'S COUNSEL]: Thank you.

Neither the Zoning Board, nor the Hickory Ridge Community Association, have provided any authority for the proposition that Kimco should not have been entitled to rely on Ms. Jung's answer. Accordingly, even though Kimco could have moved for Ms. Jung's disqualification earlier than it did, we decline to conclude that Kimco waived its disqualification motion by waiting until two months after the first day of the Zoning Board hearings (i.e., until September 20, 2019) to file its motion.

Next, we disagree with Kimco that the Zoning Board applied the incorrect legal standard in declining to disqualify Ms. Jung. The Zoning Board indicated, as Kimco now highlights, that disqualifying Ms. Jung would discourage board members from asking questions. But the Zoning Board's consideration of whether disqualification (or the potential of it) might "chill" or discourage Zoning Board members from asking questions was not improper. The Howard County Zoning Board Rules of Procedure specifically

45

provided that "[a]ny member of the Zoning Board . . . upon recognition by the Chairperson, may question any witness at any time, but the Board's questions normally will be entertained after direct and cross examination."[31] Moreover, in considering the potential "chill" on questioning that disqualification might have, the Zoning Board did so in the context of the proper standard that we have articulated for disqualification:

> [The standard is the appearance of a pre-decision] to a reasonable person, to someone coming in here cold. If they were to sit in the back and not have any idea of going on [sic], would they hear the five of us asking questions and hear one of us asking questions in a way that causes them to think that person has already pre-determined how he or she will conclude.

*See Regan*, 355 Md. at 411 (The test is "whether a reasonable member of the public knowing all of the circumstances would be led to the conclusion that the judge's impartiality might reasonably be questioned."). Thus, we see no error in the legal standard the Zoning Board applied.

Before the Zoning Board, Kimco also argued that Ms. Jung was personally biased because she had personal knowledge of, and participated in the creation of, the Community Response Statement that recommend denial of Kimco's Petition. To be sure, a factfinder may be personally biased because they have personal knowledge of disputed evidentiary facts in a proceeding. *Jefferson-El*, 330 Md. at 107 (quoting *Boyd v. State*, 321 Md. 69, 80 (1990)). *See also* Md. Rule 18-102.11(a)(1) (requiring disqualification

---

[31] This language comes from Rule 5 of the 2019 version of the Rules of Procedure of the Howard County Zoning Board. The rules have been updated since 2019 and this language is now found in Rule 8. A copy of the rules showing the changes between the 2019 version and the current version is available online at: https://perma.cc/KSD2-6QGK.

where "[t]he judge has . . . personal knowledge of facts that are in dispute in the proceeding.").[32] To be considered "personal knowledge," however, the knowledge must be acquired in an extrajudicial setting; knowledge or opinions based on evidence presented in the course of judicial proceedings is not "personal knowledge." *Jefferson-El*, 330 Md. at 107. There is a "general presumption that a trial judge can and will separate that which may be considered from that which may not," and the burden is on the party seeking recusal to substantiate actual bias or prejudice. *Boyd*, 321 Md. at 80–81. Moreover, "[s]imply because an administrator may have some earlier knowledge of a case does not mean that he or she is precluded from rendering a fair decision after all of the evidence has been presented in an evidentiary hearing." *Regan*, 355 Md. at 412.

Here, Kimco failed to show that Ms. Jung considered personal knowledge acquired outside the evidence presented to the Zoning Board. The Community Response Statement, the process for creating it, and the Community Response Statement's recommendations were all in the Community Response Statement itself, all of which were required to "become[] part of the public record" before the Zoning Board. HCZR 125.0.J.3.c. The Community Response Statement also detailed how community members participated in the development of the Community Response Statement, as well as the conclusions the community reached. Before the Zoning Board, Kimco identified nothing

---

[32] In its reply brief, for the first time, Kimco argues that Maryland Rule 18-102.11(a)(4) requires Ms. Jung's disqualification because in her Planning Board testimony, Ms. Jung appeared to commit to a final determination regarding Kimco's Petition. We do not address this argument because it was raised for the first time in a reply brief. *See Robinson v. State*, 404 Md. 208, 216 n.3 (2008) ("An appellate court will not ordinarily consider an issue raised for the first time in a reply brief.").

to suggest that Ms. Jung was influenced by any knowledge of the Community Response Statement that was not presented to the Zoning Board. Thus, Kimco did not overcome the "general presumption" that an adjudicator "can and will separate that which may be considered from that which may not[.]" *See Boyd*, 321 Md. at 81.

Before the Zoning Board, Kimco also argued that Ms. Jung's questioning of Ms. Gowan and Mr. Reed created an appearance of impropriety given her previous Planning Board testimony. Because Ms. Jung had "already demonstrated bias and prejudice in the case," as Kimco put it, her questioning of these witnesses had to be viewed within that context. According to Kimco, Ms. Jung's questioning "merely reecho[ed] and emphasize[d] [Ms. Jung's] prior testimony." Additionally, Kimco noted, Ms. Jung improperly inquired into Kimco's investments in the Hickory Ridge Village Center and Kimco's efforts to attract new tenants without redeveloping the Hickory Ridge Village Center. Finally, Kimco presented an audio recording of Ms. Jung's questioning of Mr. Reed to show that Ms. Jung's tone and demeanor contributed to the appearance of impropriety.

To begin with, we are not convinced that an objective person, knowing of all of the facts, would reasonably question Ms. Jung's impartiality based on her questioning of Ms. Gowan, the Deputy Director of the Department. Ms. Jung asked Ms. Gowan why the Department had not given greater weight to the Village Board's recommendations when preparing the Technical Staff Report. The Zoning Board was presented with conflicting determinations from the Village Board's Community Response Statement and the Department's Technical Staff Report regarding whether the proposed residential building

48

would overwhelm other uses in the village center, the requirement within the HCZR on which Kimco's Petition hinged. Moreover, the Technical Staff Report provided no clear explanation as to why its conclusion on whether the proposed residential building would overwhelm other uses in the village center differed from that of the Community Response Statement. Thus, we see no appearance of impropriety in Ms. Jung's asking Ms. Gowan about the Department's consideration of the Community Response Statement in its Technical Staff Report.

Nor would an objective person reasonably perceive impropriety in Ms. Jung's questioning of Mr. Reed, Kimco's Vice President. Ms. Jung asked Mr. Reed about what Kimco had done to address the community's response to the Petition, the economic viability of Kimco's project, Kimco's attempts to attract new commercial tenants without redeveloping the Hickory Ridge Village Center, and whether Kimco planned to charge for parking at the village center. The Community Response Statement had expressed the Village Board's concern about the height, the square footage, and number of units in Kimco's proposed residential building. The Community Response Statement also found that "the introduction of a dense concentration of 230 apartments to the area is not in keeping with the original planned community and overwhelms the center and the neighborhood." Considering that Kimco's Petition continued to propose construction of a 230-unit apartment building even after the Village Board had voiced its concerns, we see no appearance of impropriety in Ms. Jung questioning Mr. Reed as she did. Nor did we perceive an appearance of impropriety in Ms. Jung's tone and demeanor while questioning him.

Ultimately, we find no abuse of discretion in the Zoning Board's denial of Kimco's disqualification motion. Before the Zoning Board, there were differing views about whether Kimco's project would satisfy the HCZR. In declining to disqualify Ms. Jung, the Zoning Board found that Zoning Board members should be (as Ms. Jung was) engaged and active, and that Zoning Board members' questioning should not be "chilled" by the potential for disqualification. Moreover, Kimco has not met its "heavy burden to overcome the presumption of impartiality" afforded to the members of the Zoning Board. *S. Easton Neighborhood Ass'n, Inc. v. Town of Easton*, 387 Md. 468, 499 (2005). Accordingly, we cannot say that declining to disqualify Ms. Jung was "well removed from any center mark" that we can imagine, and "beyond the fringe of what [we] deem[] minimally acceptable." *See Devincentz v. State*, 460 Md. 518, 550 (2018) (cleaned up).

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**